Paula WELCH, Appellant
and Cross–Appellee,

v.

Stephanie HRABAR, Appellee
and Cross–Appellant.

No. 14–02–00473–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 19, 2003.

Robert D. Clements, Jr., Lasean Marcel Caselberry, Alvin, for appellant.

James J. Ormiston, Travis Scott Crabtree, Houston, for appellee.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

Following a trial to the court in this breach-of-contract case, the trial court rendered judgment that Appellee and Cross–Appellant Stephanie Hrabar recover "$42,-924.00 as the principal amount due," post-judgment interest, and court costs from Appellant and Cross–Appellee Paula Welch. The principal issue on appeal is whether res judicata or collateral estoppel precludes Hrabar from recovering breach-of-contract damages from Welch when (1) Hrabar filed a plea in intervention in Welch's separate tort case pending against third parties in another court, (2) Hrabar's breach-of-contract claim in the present case is identical to the breach-of-contract claim asserted in Hrabar's intervention in Welch's tort case, (3) there is no indication Hrabar's intervention was dismissed or severed out of Welch's tort case, (4) the judgment in Welch's tort case includes language denying all requested relief not specifically granted but does not include Hrabar in the style and does not refer to Hrabar's intervention in the body, and (5) neither Hrabar nor her counsel appeared or presented evidence in Welch's tort case.

We conclude the judgment in Welch's tort case does not preclude Hrabar's recovery on her breach-of-contract claim in the present case and overrule Welch's issue. We also sustain Hrabar's first issue on cross-appeal in which she requests this court to render judgment that she recover attorney's fees, but overrule her second issue in which she requests this court to render judgment awarding her additional breach-of-contract damages. Accordingly, we modify the judgment of the trial court to include an award of attorney's fees and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 1999, several plaintiffs, including Welch, filed a tort action in the Tenth

Judicial District Court of Galveston County against their insurer, Farmers Insurance Exchange. The plaintiffs in the tort action alleged damage to their properties as a result of seismic blasting. Three additional parties, Aspect Resources, LLC, Veritas DGC Land, Inc., and Ameridian Technologies, Inc., were subsequently added to the suit as defendants.[1]

In July 1999, Welch and Hrabar executed a "[l]etter of understanding for independent geoscience consulting," by which Welch and Hrabar agreed Hrabar would provide Welch with information on technical matters pertaining to Welch's property damage claim and would charge Welch at the rate of $125 per hour. Two days later, they executed an addendum to the letter of understanding, which provided Hrabar, in addition to her hourly fee, would receive ten percent of any gross settlement.

By April 2000, Hrabar's invoice to Welch indicated Hrabar had performed over 415 hours of work for a total fee of $51,880.10. Of that amount, $48,705.10 remained due, according to the invoice. By letter dated April 11, 2000, Hrabar demanded payment of the amount due.

On September 18, 2000, Hrabar filed a breach of contract action against Welch in Galveston County Court at Law No. 1. In that action, Hrabar sought $48,705.10 plus pre-judgment interest.

On February 9, 2001, Hrabar filed a plea in intervention in Welch's tort suit in district court. Hrabar represented she was the retained expert for the plaintiffs and the plaintiffs' attorney, that she performed necessary and reasonable expert witness services and incurred expenses and prepared a report for use in the pending litigation. Hrabar further represented the plaintiffs and their attorney had agreed to pay reasonable and necessary expert witness fees of $50,000, but had not done so. Hrabar requested judgment be entered in her favor "against Defendant."

At some point, Welch reached a settlement agreement with Farmers; and, on February 12, 2001, jury trial commenced in district court on Welch's tort suit against the remaining defendants. The same day, Hrabar filed an amended plea in intervention in that suit. In the amended plea, Hrabar sought judgment in her favor "against Plaintiffs." Hrabar's attorney, Gerson Bloom, was present at pretrial motions the day of trial and returned one other time, but was not present for the entire eight-day trial, and did not put on any evidence in support of the plea in intervention. According to Bloom, no one prevented him from putting on evidence, but "there just wasn't an opportunity." According to Bloom, he was on the docket sheet in the district court case, but was never recognized as the intervening attorney.

On February 19, 2001, the plaintiffs rested in the district court tort case, and the trial court granted a directed verdict that plaintiffs take nothing on their claims against Ameridian Technologies. The trial court also directed a verdict against plaintiffs and in favor of the remaining defendants, Aspect Resources and Veritas, on all claims except simple negligence.

The same day, February 19, Bloom sent a formal demand letter by certified mail to Welch, in care of her attorney, Robert D. Clements at the attorney's office address. In the letter, Bloom indicated if Welch did not pay Hrabar's claim for $48,705.10 within 30 days of receipt, Hrabar would amend her petition in county court to add a claim for attorney's fees and interest. A "D. McClure" signed the certified mail receipt on February 21, 2001. McClure was the

1. These parties were oil or drilling companies.

receptionist at Clements's office, where Welch also worked.

On February 21, 2001, the jury returned its verdict in Welch's tort case, finding against the plaintiffs and for the remaining defendants on the questions of negligence and proximate cause. The same day Welch was served with Hrabar's petition in county court.

On March 22, 2001, Welch filed her answer to Hrabar's petition in county court. Welch pleaded only a general denial. The same day, Hrabar filed her first amended petition, seeking $48,705.10, prejudgment interest, and attorney's fees.

Meanwhile, in Welch's tort case, the district court rendered a take nothing judgment against the plaintiffs on March 29, 2001. The judgment did not contain a Mother Hubbard clause and did not mention Hrabar's plea in intervention. The plaintiffs timely filed a motion to set aside jury verdict or, in the alternative, motion for new trial, and on June 6, 2001, the trial court denied the motion.[2] On June 8, 2001, the trial court rendered a modified judgment, again ordering plaintiffs take nothing, but adding an award of costs against the plaintiffs and adding the provision, "All relief requested in the above entitled and numbered cause and not specifically granted herein is denied."

Focus now shifted to the county court. On October 25, 2001, Welch filed her first amended original answer in which, for the first time, she asserted the defenses of res judicata and collateral estoppel. Hrabar filed her second amended original petition, in which she alleged, for the first time, the existence of the addendum providing Welch was to pay Hrabar ten percent of any settlement Welch received.

Welch next filed a "motion to dismiss for lack of jurisdiction," alleging res judicata and collateral estoppel as the grounds warranting dismissal. She asserted the district court judgment in her tort action barred Hrabar's breach-of-contract claim in the present case.

The case was tried to the court on January 17, 2001. Hrabar called three witnesses: Welch (as an adverse witness), herself, and Bloom (Hrabar's attorney). Welch disputed many of the invoiced charges as (1) not being part of the contract, (2) being other parties' responsibility to pay, (3) being unreasonable, or (4) already having been paid. She contended she had made payments which were not reflected on the invoice, but could not provide documentation of the payments.

Welch also testified she did not remember seeing the demand letter Bloom sent to her in care of her attorney, although Welch admitted "obviously the office signed for it." When Hrabar moved for admission of the letter, Welch objected on the ground it had not been authenticated. The trial court responded, "Didn't recognize it. Not authenticated." The trial court then sustained the objection.

When Hrabar initially attempted to inquire about the settlement proceeds Welch received in her tort suit, Welch objected the settlement was confidential and did not answer. The trial court sustained the objection, but Welch later testified she believed she had received $10,396.63 from Farmers.

2. The only document in the present case indicating denial of the motion is the district court's docket sheet, which contains the following notation for June 6, 2001: "Hearing held on Plaintiffs' Motion to Set Aside Jury Verdict and/or Motion for New Trial and after hearing testimony and arguments of counsel, Motion Denied per Order to be Filed." The order is not part of the appellate record in the present case.

Finally, Welch testified about the prior suit in district court. She stated Hrabar's intervention in that suit was based on the same contract as the present suit, and Hrabar was never severed out and never put on evidence.

Hrabar testified about the initial contract and the addendum. She explained various charges and opined the services reflected on the invoice were reasonable and necessary to accomplish what Welch was asking for. The invoice did not reflect a payment from Clements for $1,600.

Bloom testified a reasonable and necessary rate for his services was $150 per hour and he spent forty hours on this case. He was therefore asking for $6,000 in attorney's fees. Bloom also testified he had sent a certified demand letter to Welch at her attorney's office, where Welch worked. He admitted Hrabar's suit in district court was based on the same contract as her suit in county court in the present case and that he did not put on any evidence in the district court suit.

At the close of evidence, Welch moved for judgment on her affirmative defense of res judicata. In the course of arguing the matter, Bloom represented the initial judgment in the district court case had not been circulated to him and he had never been given an opportunity to review it. In response to the court's question, Bloom stated he was never recognized as an intervening attorney in the record in the prior case.

The trial court rendered judgment Hrabar recover "$42,924.00 as the principal amount due," post-judgment interest, and court costs from Welch. Welch appealed. Hrabar also appealed, "because the Trial court did not award Plaintiff attorney's fees nor did the Trial Court award the Plaintiff the full amount that she was entitled to."

## WELCH'S APPEAL

■ In a single point of error, Welch contends the trial court erred in denying her motion for judgment on her affirmative defenses of res judicata and collateral estoppel. Within the general doctrine of res judicata, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). *Hernandez v. Del Ray Chemical Int'l, Inc.*, 56 S.W.3d 112, 115 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). Because res judicata and collateral estoppel are affirmative defenses, the party asserting them has the burden of pleading and proving the elements of the asserted defense. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (collateral estoppel); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (res judicata).

■ For res judicata to apply, a party must establish the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 792 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (citing *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). For collateral estoppel to apply, a party must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 249 (Tex.App.-Hous-

ton [14th Dist.] 2000, no pet.) (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994)). Strict mutuality of parties is no longer required. *Richards*, 35 S.W.3d at 249 (citing *Sysco Food Servs.* 890 S.W.2d at 801).

◾ In short, res judicata prevents the relitigation of adjudicated claims or claims that could have been raised (claim preclusion) and collateral estoppel bars the relitigation of adjudicated essential facts (issue preclusion). Thus, when, as here, the issue or claim a defendant seeks to preclude was indeed raised in a prior suit, the prior tribunal must have actually determined the issue or claim on its merits for res judicata or collateral estoppel to bar the subsequent suit. For three interrelated reasons, we conclude Welch did not meet her burden of establishing the elements of either defense.

◾ First, Welch did not meet her burden of establishing that the district court's judgment actually disposed of (*i.e.*, adjudicated) Hrabar's claim. Hrabar is not included in the style of the district court judgment, and the district court does not explicitly dispose of her claim in the body of the judgment. *See* TEX.R. CIV. P. 306 (providing entry of judgment "shall contain the full names of the parties, as stated in the pleadings, for and against whom the judgment is rendered"); *City of Austin v. Castillo*, 25 S.W.3d 309, 314–15 (Tex.App.-Austin 2002, pet. denied) (stating same and remanding for new trial when plaintiff was not named in judgment, but by virtue of a Mother Hubbard clause, he took nothing).[3]

Hrabar's attorney was never recognized as an attorney of record in the district court.[4] On appeal, Hrabar represents that no district court judgment was presented to her trial counsel for review, approval, or signature.[5] *See* TEX.R. CIV. P. 305 (requiring each party who submits a proposed judgment to serve proposed judgment on all other parties to the suit who have appeared and remain in the case). Accordingly, this case is not an appropriate one in which to apply the presumption that, when a trial court signs a judgment after a conventional trial on the merits, the trial court "intended to, and did, dispose of . . . all issues made by the pleadings between the parties." *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966).

◾ Second, even were we to conclude the district court disposed of Hrabar's claim in the judgment, Welch has not established the district court disposed of the claim **on its merits**. Hrabar did not appear in Welch's tort action. The district court did not recognize her attorney on the record in that action, and the attorney put on no evidence. Welch argues Hrabar was required to put on evidence in the district court case, and implies her failure to do so prevents her from contending her claim was not decided on the merits. In support Welch cites only Texas Rule of Civil Procedure 265(e), which provides, "The intervenor and other parties shall make their statement, unless they have already done so, and shall introduce their evidence." Rule 265, however, deals with the order of

---

3. The district court's judgment here, with its Mother Hubbard clause, is therefore distinguishable from a judgment that is silent on one of two claims pleaded by a single party. *Cf. Rackley v. Fowlkes*, 89 Tex. 613, 36 S.W. 77 (1896), *cited in Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 196–97 (Tex.2001).

4. Thus, Hrabar's attorney never entered an appearance. *See* TEX.R. CIV. P. 120.

5. Hrabar bases this claim on the lack of her attorney's signature on any of the judgments. In the trial court, Hrabar's attorney stated only that the initial judgment had not been circulated to him.

proceedings in a jury trial; it does not address the ramifications of an intervenor's not putting on evidence.

The latter issue was addressed in *Noble v. Meyers*, 76 Tex. 280, 13 S.W. 229 (1890), *cited in* 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 5.81, at 610 n. 657 (Diane M. Allen et al. eds., 1992 ed.). *Noble* involved a suit for partition of land brought by the heirs, except one, of Grace B. Noble. *Noble*, 13 S.W. at 229. Appellant intervened, claiming he and other heirs of his father owned an undivided interest in one-half of the lands to be partitioned. *Id.* The plaintiffs responded to the intervention, raising various defenses, but did not pray for any affirmative relief against the intervenor. *Id.* The intervenor did not appear at trial, and the trial court decreed the intervenor "take nothing by his intervention." *Id.* The supreme court disagreed with this disposition, stating,

> We think that the proper judgment for the court to have rendered, under these circumstances, would have been to dismiss the intervention without prejudice. An intervenor against whom no affirmative relief is asked by the pleadings of the other parties to the cause occupies so much the position of a plaintiff that the only proper action to take with regard to him, when he fails to appear, is to dismiss his suit for want of prosecution. The fact that the intervention is in a suit for partition does not change or affect the rule.

*Id.* at 230.

We conclude Hrabar held the status of a plaintiff in the district court. If a suit is dismissed without prejudice, or if the plaintiff takes a voluntary nonsuit, res judicata does not impede subsequent actions. *Bell*, 832 S.W.2d at 755. Under *Noble*, the appropriate disposition of Hrabar's intervention in Welch's case was dismissal without prejudice. Accordingly, we decline to construe the district court's judgment as a judgment on the merits such as would bar the present suit.[6]

Nevertheless, Welch directs this court to *Schwartz v. Taheny*, 846 S.W.2d 621 (Tex. App.-Houston [14th Dist.] 1993, writ denied). In that case, Schwartz had intervened to recover attorney's fees from his former client, who had fired Schwartz before trial. *Id.* at 622. The intervention was supposed to have been severed and heard only if the client recovered on his claim. *Id.* The case went to trial, the jury found in favor of the client, and the trial court rendered judgment awarding actual damages to the client. *Id.* In the judgment, however, the court made no mention of the intervention and included a Mother Hubbard clause. On appeal, Schwartz argued inclusion of this clause disposed of his intervention claim in violation of his due process rights. *Id.*

In the course of deciding the case, we stated, "A judgment which provides that 'all relief not expressly granted is hereby denied,' disposes of all parties and issues in a case; it is a final judgment. An intervenor is bound by a final judgment unless he has been dismissed, severed, or he has withdrawn." *Id.* (citations omitted). Welch relies on the second sentence to argue Hrabar is bound by the district court judgment.

6. We note, too, the general rule that res judicata does not prelude a claim that is subject to a future condition. *See Valley Forge Ins. Co. v. Ryan*, 824 S.W.2d 236, 238–39 (Tex. App.-Fort Worth 1992, no writ). Although Hrabar's plea in intervention was not stated as a conditional claim, Hrabar's attorney subsequently explained Hrabar filed as an intervenor in Welch's lawsuit "to try and trap some of the funds that would have been paid from the defendant in the underlying suit to Ms. Welch." In essence, then, Hrabar's intervention presented a claim triggered only on a recovery by Welch.

In *Schwartz*, however, the parties advised the court of appeals the trial court had severed the intervention, and this court went on to hold the trial court erred in entering a final judgment that disposed of the intervention claim without first hearing that claim. *Id.* at 623. This court then reversed the judgment and remanded for a trial on the merits of the intervention claim. *Id.* Importantly, this court concluded the intervenor's claim was not legitimately encompassed within the final judgment pursuant to the Mother Hubbard clause. *Schwartz* is procedurally distinguishable from the present case, but to the extent it has any relevance, it reinforces our conclusion it would be inappropriate to hold the Mother Hubbard clause in the district court judgment was a judgment on the merits sufficient to support the affirmative defenses of res judicata and collateral estoppel as bars to Hrabar's claim in county court.

 Third, the policies underpinning res judicata and collateral estoppel do not support application of these doctrines in the present case. "The policies behind the doctrine [of claim preclusion or res judicata] reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 629. Similarly, the doctrine of collateral estoppel reflects the need to bring all litigation to an end and is designed to protect parties from multiple lawsuits, promote judicial efficiency, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Servs.*, 890 S.W.2d at 801. In the present case, because Hrabar did not appear and did not put on evidence in district court, Welch was not forced to litigate the breach of contract claim in that

court, and, as discussed above, there is no indication the district court expended any resources in determining Hrabar's claim.

In summary, Welch did not establish the district court actually disposed of her breach of contract claim on the merits, and we conclude the policies underlying res judicata and collateral estoppel would not be served if the district court's judgment barred her present claim. Accordingly, we overrule Welch's sole point of error.

## HRABAR'S APPEAL

Hrabar challenges two aspects of the judgment. In issue one, she contends the trial court should have awarded her attorney's fees. In issue two, she contends the trial court erred in not granting her additional damages equal to ten percent of Welch's settlement proceeds. In her prayer for relief, she requests this court to render judgment for attorney's fees in the amount of $6,000, the additional recovery of ten percent of the settlement proceeds of $10,396.63 (*i.e.*, $1039.66), plus "additional costs and attorney's fees for this appeal."

### Attorney's Fees

In issue one, Hrabar contends she is entitled to attorney's fees under Texas Civil Practice and Remedies Code section 38.001. She argues that, even without the demand letter being admitted into evidence, she established she complied with the requirements of section 38.002, the procedure a claimant is to follow if she is to recover attorney's fees under section 38.001. Finally, she contends the unrefuted testimony established her counsel charged a reasonable and necessary fee of $6,000 for the services he performed and requests this court to render judgment for attorney's fees in that amount.[7]

---

7. As set forth above, Hrabar also prays for additional costs and attorney's fees for this

appeal. Hrabar did not present the trial

Welch counters by citing *Cale's Clean Scene Carwash, Inc. v. Hubbard*, for the proposition that a zero award for attorney's fees is proper if the evidence (1) fails to prove (a) any attorney's services were provided; or (b) the value of the services provided; or (2) affirmatively shows no attorney's services were needed or that any services provided were of no value. 76 S.W.3d 784, 787 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Welch then argues Hrabar's fees in the county court suit could not have been reasonable and necessary because, under the doctrines of res judicata and collateral estoppel, this suit should have been barred altogether.

▇▇▇ Texas Civil Practice and Remedies Code section 38.001 provides in relevant part: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... rendered services." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(1) (Vernon 1997). To recover attorney's fees under Chapter 38, a claimant (1) must be represented by an attorney; (2) she must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) before the expiration of the 30th day after the claim is presented, the opposing party must not tender payment for the just amount owed. TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997). When a party proves these three requisite elements, an award of attorney's fees for breach of contract is mandatory, not discretionary. *Cale's Clean Scene Carwash*, 76 S.W.3d at 787 & n. 4.

▇▇▇ Bloom, Hrabar's attorney, testified that, at least 30 days before coming to court, he sent a certified letter to Welch at her attorney's office where Welch worked, and Clements (Welch's trial counsel) was her agent. Bloom continued, "It was signed by the green card [sic] demanding that she pay Ms. Hrabar's bill within 30 days of receipt of the letter, and that payment was not received." Although Welch testified she did not remember seeing the letter, she acknowledged the green card had been signed by a receptionist at Clements's office. Bloom's and Welch's testimony was uncontroverted. Hrabar proved the requisite elements entitling her to attorney's fees.

Bloom testified he spent 40 hours on "this case alone," that the 40 hours was reasonable and necessary, and that a reasonable and necessary hourly rate was $150. Welch did not present controverting testimony. In cross-examination of Bloom, Welch did point to the fact that Hrabar had requested only $2,500 in her intervenor action and also had not appeared or put on any evidence in that case.

▇▇▇ When an attorney's testimony regarding his fees is uncontroverted, clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise, and appellate court may, in the interest of judicial economy, render judgment for attorney's fees. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990); *see also World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 684, 686 (Tex.App.-Fort Worth 1998, pet. denied) (citing *Ragsdale* and rendering judgment for $60,000 in attorney's fees for trial in breach-of-contract case). This exception to the general rule regarding interested witness testimony, however, does not mean in every case in which a party offers uncontradicted testimony, such testimony mandates an award of the claimed amount. *Ragsdale*, 801 S.W.2d at 882. "For example, even though the evidence might be

court with any evidence regarding appellate attorney's fees.

uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id.*

We have rejected Welch's argument the present suit was barred. Welch's cross-examination of Bloom regarding his conduct of the district court case and the difference between the fee requested in that case and the fee requested in county court does not render the evidence regarding Bloom's fee in this case unreasonable, incredible or of questionable belief such as to raise a question to be determined by the trier of fact.

We sustain Hrabar's issue one and render judgment Hrabar recover $6,000 in attorney's fees.

**Recovery under the Addendum**

In issue two, Hrabar contends she was entitled to ten percent of Welch's settlement proceeds from the district court tort case. She requests this court to render judgment for the additional ten percent recovery. She also "requests that Welch be required to submit to the Court for an *in camera* inspection the settlement documents from the Underlying Lawsuit to allow confirmation of the settlement proceeds received by Welch."

■ On the record before this court, we cannot determine what the judgment award of "$42,924.00 . . . principal amount due" comprises. Although $42,924 is less than the $48,705.10 Hrabar originally asserted Welch owed on the invoice under the hourly contract, the trial court appears to have deleted charges from Hrabar's invoice to Welch. In addition, Hrabar conceded she had received $1,600 from Clements, and in her trial brief reduced her

original demand by $1,600 to a demand of $47,105.10, but we are unable to determine whether the trial court further reduced Hrabar's recovery by this amount or offset it by an amount attributable to the addendum. In short, the record before this court is insufficient to establish the alleged error of which Hrabar complains.[8]

■ Moreover, Hrabar cites no authority in support of her arguments under issue two. An issue must be supported by argument and authorities to be properly before the court on appeal. *Knoll v. Neblett*, 966 S.W.2d 622, 639 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

We overrule Hrabar's issue two.

### CONCLUSION

We have overruled Welch's sole issue. We have sustained Hrabar's issue one and overruled Hrabar's issue two. Accordingly, we modify the judgment of the trial court to include an award of attorney's fees of $6,000, and affirm the judgment as modified.

---

8. Defendant's Exhibit 9 is a color coded copy of Hrabar's invoice to Welch under the hourly contract. It contains handwritten notations, "delete," and a handwritten calculation:

"$48,705.00" minus "$5,781.00" for a total of "$42,924.00." This calculation reflects subtraction of the indicated deletions, but no acknowledgment of the $1,600 payment.