Reversed and remanded and Opinion filed January 29, 2004









Reversed and remanded and Opinion filed January 29,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00049-CR

____________

 

EMMA G. BARRERA AND NICKOLAS S.
BARRERA,
Appellants

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 427,333-A

 



 

O P I N I O N

Appellants Emma G. Barrera and Nickolas
S. Barrera  appeal from a final judgment
(1) declaring the status of four assets, (2) ordering one of the assets turned
over to the Harris County Constable for sale, and (3) applying the proceeds to
Emma=s unpaid final judgments owed
to appellee, the State of Texas.  Because we conclude the trial court erred in
rendering the summary judgments on which the final judgment rested, we reverse
and remand for further proceedings.








PROCEDURAL BACKGROUND

In 1986, Jack Wilmer Eatmon, as principal, and Emma Barrera,
as surety, executed a bail bond in the amount of $20,000 for Eatmon=s release pending appeal.  When Eatmon failed to appear as required in
February 1989, the trial court entered a judgment of forfeiture (judgment
nisi).  After a first citation was
returned unexecuted, a second citation was issued to Emma on August 8, 1990,
and she was personally served on August 15, 1990.  A final judgment of forfeiture in favor of
the State for the full amount of the bond plus costs (a total judgment of
$20,153.00) was filed with the clerk on September 7, 1990.

In April 1999, the State filed a request to determine status
of property and for turnover, naming only Emma as respondent.  The State subsequently amended its pleadings
to name both Emma and her spouse, Nickolas, as
respondents and limited its request to four specific assets:  3000 N. Taylor Road, McAllen (the McAllen
property); 6934 Heron Drive, Houston (the Houston property); 138.79 acres in
Starr County (the Starr County Ranch); and a $50,000.00 certificate of deposit
(the CD), alleged to be the remaining proceeds from the sale of land in Hidalgo
County.  Later, the State again  amended its pleadings to allege Emma=s failure to pay twenty-one
additional judgments against her in bond forfeiture cases, for a total
outstanding amount of $363,458.86.

Appellants answered and also filed a motion to dismiss,
alleging the underlying judgment of forfeiture was void for lack of
jurisdiction.  The trial court denied the
motion to dismiss; and, on the State=s motion, ordered $1,000.00 in
sanctions against appellants and their attorney.








Appellants then counterclaimed.  Among other relief, they sought a declaratory
judgment that the Houston property was their homestead and sought actual and
exemplary damages for slander of title. 
They alleged they had lost a sale of the Houston property because of
judgment liens the State had placed on the Houston property.  The State pleaded sovereign immunity,
asserted special exceptions, and alleged a general denial and various other
defenses.

In October 2000, the State filed a motion for summary
judgment requesting the court to (1) declare the McAllen property as appellants= legal homestead; (2) declare
the Houston property to be non-homestead, community property, subject to joint
management, control, and disposition and non-exempt from execution, levy, and
forced sale; (3) declare the Starr County Ranch to be non-homestead, community
property, subject to joint management, control, and disposition and non-exempt
from execution, levy, and forced sale; (4) declare the CD to be community
property, subject to joint management, control, and disposition and non-exempt
from execution, levy, and forced sale and to order the CD be turned over to the
Harris County Constable; and (5) dismiss appellants= counterclaim.  Appellants opposed the motion, tendering in
support their own affidavits, that of their attorney, and various real estate
documents.

The trial court granted the State=s motion in part, declaring all
four properties to be community property, subject to joint management, control,
and  disposition.  The court also declared the Starr County
Ranch and the CD to be non-exempt and ordered the CD to be turned over.  Finally, the court dismissed appellants= counterclaim.








A month later, appellants filed their first amended
counterclaim, reasserting their original claims and adding a claim for breach
of contract.  The latter was based on
allegations (1) appellants and the State had entered into a contract under
which the State would release the Houston property from Athe effect@ of the judgment liens if
appellants would provide the State with certain affidavits drafted by the State
or with other documentation, (2) appellants had complied with their
obligations, and (3) the State refused to provide a release of lien.  The same day, appellants filed a motion to
disqualify the State=s attorneys, Kathleen Braddock
and Mark Font.  In the motion to
disqualify, appellants alleged, in part, Braddock and Font would be material
witnesses on the question of whether appellants and the State had reached an
agreement regarding release of the lien. 
The trial court denied the motion to disqualify and, on the State=s motion, struck appellants= first amended counterclaim.

In August 2002, the State filed a second motion for summary
judgment, requesting a partial summary judgment that appellants had abandoned
any homestead claim in the Houston property. 
In support, the State attached, among other items, a Adesignation of homestead and
affidavit of nonhomestead@ executed by appellants on
April 17, 1995, in which they claimed the McAllen property as homestead.  The State also attached documents concerning Nickolas=s misdemeanor perjury
conviction, which was based on his April 1, 1999 execution of an affidavit in
which he swore the Houston property was his homestead:  AMy wife and I purchased this
property in 1968 and have declared it our homestead, for all purposes including
taxes since that time . . . .  My wife
and I have not declared or designated any other property as our homestead for
taxes or any other purpose since that time.@

Appellants responded, relying on exhibits attached to their
response to the State=s first motion for summary
judgment.  In addition, they attached Nickolas=s affidavit in which he
attested the McAllen property was titled in his name alone and Emma never had
an ownership interest in the property. 
He also stated it was not his intent to claim a homestead exemption on
the McAllen property.

The trial court granted the State=s motion for summary judgment
and subsequently signed a final judgment, which provided:

On November 10, 2000, and September 17, 2002, in the
above styled case, the Court granted the State of Texas two Partial Summary
Judgments.  It is therefore ORDERED
ADJUDGED AND DECREED that:

 

1.         The real property commonly referred to as 3000 N. Taylor
Rd., McAllen, Hidalgo County, Texas is community property, subject to joint
management control, and disposition.

 








2.         The real property commonly referred to 6934 Heron, Houston,
Harris County, Texas, is community property, subject to joint management control,
and disposition.

 

3.         The real property described as the 138.79 acre Starr County
Ranch is community property, subject to joint management, control, and
disposition and such property is not exempt from execution, levy, and forced
sale under the laws of the State of Texas.

 

4.         The $50,000 certificate of deposit at First National Bank is
community property, subject to joint management, control, and disposition and
is not exempt from execution, levy, and forced sale under the laws of the State
of Texas and the certificate, together with any papers necessary to redeem or
levy upon the certificate, shall be turned over to the Constable of Harris
County, Texas, who shall take whatever steps are necessary to receive the
funds, and after expenses, apply the proceeds to Defendant Emma Barrera=s unpaid final judgments owing the State of Texas.

 

5.         Nickolas Barrera and Emma Barrera
abandoned their homestead interest in the real property described as Lot 9, Block
18, Bayou Oaks Section 1, an addition in Harris County, Texas commonly referred
to as 6934 Heron, Houston, Texas 77087 and said property is not exempt from
execution, levy and forced sale under the laws of the State of Texas.

 

After considering the evidence submitted by the
parties to the Court on the attorney fees issue, the Court ORDERS, ADJUDGES AND
DECREES that the State of Texas is entitled to attorney fees in the amount of $
NONE.

 

Defendant Emma Barrera has failed to satisfy
twenty-one (21) final judgments entered by the District and County Criminal
Courts at Law of Harris County, Texas, in favor of the State of Texas in bond
forfeiture cases.  The aggregate amount
due on the unpaid judgments is $363,458.86.

 








It is, therefore, ORDERED, ADJUDGED, and DECREED that
the State of Texas is entitled to a final judgment for the unpaid judgments in
the amount of 363,458.86 and attorney fees in the amount of $ CCC, a total judgment of $365,458.86.  The Court finds that the award of attorney
fees and the two partial summary judgments disposes of all claims brought by
the parties, making this a final judgment. 
All relief not expressly granted herein is denied.

 

DISCUSSION

Issue One: Failure to Dismiss because
the Underlying Judgment is Void

In issue one, appellants argue the trial court erred in not
dismissing the case because the underlying final judgment on the bond
forfeiture is void.  They contend the
underlying judgment is void because, as they correctly observe, the final
judgment was rendered before Emma Barrera, the defendant in that suit, was
required to answer.  See Tex. R. Civ. P. 239
(providing default judgment may be rendered A[u]pon
such call of the docket, or at any time after a defendant is required to
answer); Surety Ins. Co. of Cal. v. State, 514 S.W.2d 454, 456, 457
(Tex. Crim. App. 1974) (stating judgment entered
before expiration of the minimum time required by rules for an answer is void
and also stating appeal by bill of review or writ of error is exclusive method
by which to challenge default judgment).[1]  Emma did not challenge the underlying
judgment by bill of review or writ of error.

Appellants, however, contend because the judgment is void,
they may attack it Aat any time and in any
proceeding.@[2]  This court rejected a similar argument in Nguyen
v. Intertex, Inc.:








Nguyen maintains that, because the
judgment in the first lawsuit is void, it may be attacked at any time, and therefore
he is not required to satisfy the requisites of a bill of review.  This is not correct.

 

The Texas Supreme Court has held
several timesCalthough not recentlyCthat when the plenary power of the
court rendering the judgment has expired, a bill of review is the exclusive
method for attacking a judgment entered in a case in which the court had
jurisdictional power to render it.  Middleton
v. Murff, 689 S.W.2d 212, 213 (Tex. 1985) (per curiam);  McEwen
v. Harrison, 162 Tex. 125, 345 S.W.2d 706, 710 (1961); see also Tex. R. Civ. P.  329b(f). 
The only exception to this rule is when the court rendering the judgment
had no Ajurisdictional power@ to enter a judgment.  Middleton, 689 S.W.2d at 213.  The court has Adefined >jurisdictional power= in this sense to mean >jurisdiction over the subject matter,
the power to hear and determine cases of the general class to which the
particular one belongs.=@ 
Id.  In fact, in response
to a similar claim that a judgment was void and that a motion to vacate it
should have been granted, the Supreme Court did not distinguish between a void
and a voidable judgment.  It held the following:

 

We find it unnecessary to decide
whether the consent judgment was void or merely voidable.  In either instance, a bill of review is the
exclusive remedy since the time for an appeal from the . . . judgment has
expired.  The Court of Appeals cites Freeman
v. Freeman, 160 Tex. 148, 327 S.W.2d 428, 433 (1959), and Glenn W. Casey
Constr. v. Citizen=s Nat=l Bank, 611 S.W.2d 695, 701 (Tex. Civ. App.CTyler 1980, no writ) for the
proposition that >[i]f a
judgment rendered by a trial court is void, it may be set aside by that court
at any time.= 
We disapprove of this statement.

 

Middleton, 689 S.W.2d at 213 (citations
omitted).  Thus, all errors other
than jurisdictional deficiencies must be corrected on direct attack.  Id. When time for direct attack by appeal,
Rule 306a motion, or a restricted appeal has elapsed, a bill of review in the
court rendering the initial judgment is the exclusive remedy to attack the
judgment.  Id.; Tex. R. Civ. P. 306a.

 

93 S.W.3d 288, 293, 294B95 (Tex. App.CHouston [14th Dist.] 2002, no
pet.) (footnotes omitted) (emphasis added). 
Appellants cite no authority that entry of a judgment before an 








answer is due is a jurisdictional deficiency, and we have
found none.[3]

We overrule issue one.

Issue two: Failure to Dismiss Nickolas Barrera

In issue two, appellants contend the trial court erred in
refusing to grant their motion to dismiss Nickolas
Barrera from this turnover proceeding because the underlying judgment was
against Emma Barrera only.  In support,
appellants cite Beaumont Bank, N.A. v. Buller,
in which the court stated, ATexas courts do not apply the
turnover statute to non‑judgment debtors.@  806 S.W.2d 223, 227 (Tex. 1991).

The turnover statute provides the trial court may Aorder the judgment debtor to
turn over nonexempt property that is in the debtor=s possession or is subject to
the debtor=s control, together with all
documents or records related to the property, to a designated sheriff or
constable for execution.@  Tex. Civ. Prac. & Rem. Code Ann. ' 31.002(b)(1) (Vernon Supp. 2004).  In Schultz v. Fifth Judicial District
Court of Appeals, the supreme court observed:

Upon proof of the necessary facts,
[the turnover statute] authorizes the trial court to order affirmative action
by the judgment debtor and others to assist the judgment creditor
in subjecting such non‑exempt property to satisfaction of the underlying
judgment.  Such an order acts as a
mandatory injunction against the judgment debtor and, if there are such
parties, against the receiver and any third parties interested in the
property rights being adjudicated.

 

810 S.W.2d 738, 740, 740 (Tex.1991) (emphasis added).








In Plaza Court, Ltd. v. West, this court, in dictum,
recognized an exception to the general rule that the turnover statute does not
support a proceeding against an entity who is not a judgment debtor.  879 S.W.2d 271, 276B77 (Tex. App.CHouston [14th Dist.] 1994, no
writ).  That exception may apply when Athe trial court makes a factual
finding that the property on which execution is sought is subject to the
possession or control of the judgment debtor, even if retained by a third
party.@  Id. at 277 (citing Norsul
Oil & Mining Ltd. v. Commercial Equip. Leasing Co., 703 S.W.2d 345, 349
(Tex. App.CSan Antonio 1985, no writ)); see
also Lozano v. Lozano, 975 S.W.2d 63, 68 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied) (stating turnover statute allows a court to reach assets owned by and
subject to control of a judgment debtor, even if those assets are in the hands
of a third party).[4]  In Dale v. Finance America Corp., for
example, the Fort Worth Court of Appeals held the trial court properly ordered
turnover of community property held in a trust bearing the non-judgment debtor=s name because the trust was
subject to the judgment debtor=s possession or control.  929 S.W.2d 495, 499 (Tex. App.CFort Worth 1996, writ denied).

In the present case, the State sought a determination of the
ownership of four specific assets and turnover of the same:  three pieces of real property and a
certificate of deposit.  The State
alleged all four properties were acquired during appellants= marriage and were therefore
presumed to be community property.  If
that community property, despite also being in Nickolas=s name, was subject to Emma=s possession or control, the
trial court could properly issue and enforce a turnover order against Nickolas.  Dale,
929 S.W.2d at 498B99.[5]

The trial court did not err in declining to dismiss Nickolas.  We
overrule issue two.

Issue Three: Rule 13 Sanctions








In issue three, appellants contest the trial court=s February 11, 2000 order
imposing $1,000 in sanctions against appellants and their attorney.  This order was not incorporated into the
trial court=s final judgment; and, in their
notice of appeal, appellants state only that they are appealing from the final
judgment.  See Tex. R. App. P. 25.1(d)(2) (requiring
that notice of appeal Astate the date of the judgment
or order appealed from@).  Moreover, appellants have paid the $1,000,
thereby rendering the issue moot.  See
Highland Church of Christ v. Powell, 640 S.W.2d 235 (Tex. 1982) (stating
when judgment debtor voluntarily pays and satisfies judgment rendered against
him, the cause becomes moot). 
Accordingly, we do not address this issue.

Issues Four, Five, Six, Seven and
Nine: Challenges to the Summary Judgments

Introduction and Standard of Review

In issue four, the Barreras
contest the trial court=s declaration that the McAllen
property was their joint management community property; in issue five, the
declaration that the Starr County Ranch was non-exempt joint management
community property; in issue six, the declaration the CD was non-exempt joint
management community property subject to turnover; and in issue nine, the
declaration appellants had abandoned their homestead interest in the Houston
property.  In issue seven, appellants
contest the summary disposition of their counterclaim for slander of title,
which rested on their claim the Houston property was homestead.

We review a turnover order under an abuse-of-discretion
standard.  See Beaumont Bank, 806
S.W.2d at 226 (holding the court of appeals should have reviewed trial court=s judgment ordering turnover
under abuse of discretion standard and stating whether there was no evidence to
support the turnover award would be relevant to determining whether  trial court abused its discretionary
authority in issuing the order).  In the
present case, however, the State prayed for, and obtained, a declaratory
judgment regarding the status of the four properties in question, and it did so
by means of summary judgment.[6]








We review declaratory judgments under the same standards as
other judgments and decrees. See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.010 (Vernon 1997); Lidawi v. Progressive County Mut.
Ins. Co., 112 S.W.3d 725, 730 (Tex. App.CHouston [14th Dist.] 2003, no
pet.) (citing City of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex. App.CHouston [1st Dist.] 1995, no
writ.)).  We look to the procedure used
to resolve the issue at trial to determine the standard of review on
appeal.  Id. (citing Giles,
902 S.W.2d at 170).  Accordingly, in
reviewing the declaratory provisions in the present case, we look to the
standards applicable to summary judgment. 
See Hale v. Badouh, 975 S.W.2d 419, 423
(Tex. App.CAustin 1998) (applying summary
judgment standard of review to declaratory relief on issue of disclaimer of
property which was subject of turnover order), aff=d in part and rev=d in part on other grounds, 22 S.W.3d 392 (Tex.
2000).  








The purpose of summary judgment is to eliminate patently
unmeritorious claims or untenable defenses; it is not intended to deprive
litigants of their right to a full hearing on the merits of any real issue of
fact.  Gulbenkian
v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  A plaintiff moving for summary judgment must
conclusively prove all essential elements of its claim.  See MMP, Ltd. v. Jones, 710 S.W.2d 59,
60 (Tex. 1986); Geiselman v. Cramer Fin.
Group, Inc., 965 S.W.2d 532, 535 (Tex. App.CHouston [14th Dist.] 1997, no
writ).  The movant
for summary judgment has the burden to show there is no genuine issue of
material fact and it is entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985).  When
deciding whether there is a disputed material fact issue precluding summary
judgment, the appellate court must take as true all evidence favorable to the
non‑movant. 
Id. at 548‑49.  The
reviewing court must indulge every reasonable inference in favor of the non‑movant and resolve any doubts in its favor.  Id. at 549.  If the trial court grants a motion for
summary judgment without stating the grounds on which it relied, we must affirm
the summary judgment if any ground argued in the motion was sufficient.  Star‑Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995); Blan v. Ali,
7 S.W.3d 741, 747B48 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).

Appellants=
Challenges

Issues seven and nine:
concerning the homestead question.  In issue seven,
appellants contest the summary disposition of their counterclaim for slander of
title, which rested on their claim the Houston property was homestead.  In issue nine, appellants contest the
declaration appellants had abandoned their homestead interest in the Houston
property.

The State does not directly address the first
contention.  Instead, the State contends
simply the trial court correctly decided the homestead issues.  In support, it offers the same four grounds
it set forth in its second motion for summary judgment: (1) collateral estoppel based on Nickolas=s misdemeanor purjury conviction, (2) the doctrine of unlawful acts, (3)
appellants= 1995 signing of a document
designating the McAllen property as homestead, and (4) appellants= having registered to vote in
Hidalgo County.

For collateral estoppel to apply,
the State was required to establish (1) the facts sought to be litigated in the
second action were fully and fairly litigated in the first action; (2) those
facts were essential to the judgment in the first action; and (3) the parties
were cast as adversaries in the first action. 
Welch v. Hrabar, 110 S.W.3d 601, 606
(Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  Strict mutuality of parties is
no longer required.  Id. at
607.  The State claims the resolution of
whether Nickolas Barrera had his homestead at the
McAllen property or whether his homestead was the Houston property was the Avery issue@ litigated in the criminal
perjury case.  We disagree.

As set forth in the indictment, the issue in the perjury
case was whether, on April 1, 1999, Nickolas

unlawfully . . . and under oath did
make a false statement, namely, that he had never declared or designated any
property other than 6934 Heron, Houston, Texas, as his homestead for taxes or
any other purpose, whereas in truth and in fact [Barrera] had designated and
declared 3000 N. Taylor Road, McAllen, Texas as his homestead for property tax
purposes.








 

The fact essential to the judgment in the perjury case was
whether Nickolas had designated and declared a
property other than the Houston property as homestead, not whether that other
property was actually Nickolas=s homestead.  Collateral estoppel
does not support the trial court=s summary judgment in favor of
the State.

The State also argues, under the Aunlawful acts rule,@ Nickolas=s  illegal conduct in claiming more than one
homestead exemption prevents him from now claiming the exemption on the Houston
property.@  As the supreme court explained in 1888, AIn those cases where it is
shown that, at the time of the injury, the plaintiff was engaged
in the denounced or illegal act, the rule is, if the illegal act contributed to
the injury he can not recover . . . .@   Gulf, Colo. & Santa Fe Ry. Co. v. Johnson, 71 Tex. 619, 621B22, 9 S.W. 602, 603 (1888)
(emphasis added).  The State has cited no
case in which the rule was applied against a defendant, and we
have found none.  We decline to apply the
rule in the context of the State=s action to determine the
status of property.  Furthermore,
although the unlawful acts rule might prelude appellants from recovering on
their slander-of-title claim, the State did not argue this ground in the
summary judgment motion that resulted in dismissal of that claim.[7]








The State points to a document appellants signed in 1995
declaring part of the McAllen property as homestead.  In his affidavit, however, Nickolas explained the 1995 document appeared to have been
signed in connection with his purchase of land in Alton, Texas.  Nickolas further
stated, AWhen I signed that document, I
do not believe that any property descriptions were filled in.  I never received a copy of that document
after the property descriptions were filled in.@[8]

Finally, the State points to appellants= voter registrations in Hidalgo
County as Apersuasive evidence@ their home is on the McAllen
property.  Nickolas
stated he and his wife registered to vote in Hidalgo County in 1993, Aonly because we were spending
more time in McAllen than in Houston at that time, and we wanted to make sure
we could vote when elections occurred. 
It was never our intent to claim the house and property located at 3000
North Taylor Road, McAllen, Texas as our homestead by registering to vote in
Hidalgo County.@

Both Nickolas and Emma stated the
Houston property was their permanent residence, when absent, they had the
intention of returning, and the most time they were away from Houston was two
and a half months.  Although in December
1996, Nickolas signed an application for residential
homestead in Hidalgo County, he testified 
he did not date the document, intending that it be on file only to show
he was the owner of the property.  In
April 1999,  after signing the affidavit
that was subsequently the basis for the perjury charge, Nickolas
then knew the Hidalgo County Appraisal District Amade an error,@ and he wrote them asking to
remove the McAllen homestead exemption.

We conclude the State has not met its burden of showing
there are no genuine issues of material fact and it is entitled to judgment as
a matter of law on appellants= counterclaim for slander of
title and on its own request to declare appellants abandoned the Houston
property as homestead.  See Nixon,
690 S.W.2d at 548.  We sustain appellants= issues seven and nine.








Issues four, five, and six:
concerning community property.  In issues four,
five, and six, respectively, appellants challenge the designation of the McAllen
property, the Starr County Ranch, and the CD as non-exempt, joint management
community property.  They contend the
summary judgment proof established the McAllen property as Nickolas=s sole management community property
and the Starr County Ranch and CD as either Nickolas=s separate property or his sole
management community property.[9]








McAllen.   Appellants presented the following summary
judgment proof regarding the McAllen property: 
(1) Nickolas=s affidavit, in which he stated
the McAllen property was in his name only, Emma=s name had never been on the
title to that property, and the property had always been under his control and
management; and (2) Emma=s affidavit to the same
effect.  On appeal, the State does not
discuss which parts of its summary judgment proof conclusively establish the
community property status of the McAllen property, presumably because the State
takes the position the McAllen property is appellants= homestead and is not attempting
turnover of that property.

Starr County Ranch.   Appellants presented the following summary
judgment proof regarding the Star County Ranch: (1) Nickolas=s affidavit, in which he stated
he purchased the property with money earned in his law practice, none of Emma=s money or money from the bail
bonding business was used to purchase the property, and, as he and Emma agreed,
he made all of the decisions about managing and operating the property; and (2)
a June 21, 1990 quitclaim deed by which Emma deeded all of her interest in the
property to Nickolas. 
The State presented the following summary judgment proof : (1) Emma=s response, A[i]n
the 80=s,@ to a question about when Adid y=all buy [the acreage]@; (2) her response that Awe@ let the neighbors run cattle
on the property, and (3) Emma=s having signed note and lien
extensions for the property in 1993 and 1996.

The CD.   Appellants presented the following summary
judgment proof regarding the CD:  (1) Nickolas=s affidavit, in which he stated
the CD was purchased with proceeds from land he sold  that was located in Hidalgo County and was
used for growing citrus trees, and all of the land had been in his name only;
(2) the deeds for the property showing his name only; and  (3) a June 21, 1990 quitclaim deed by which
Emma deeded all of her interest in the property to Nickolas.  The State presented the following summary
judgment proof: (1) admissions from appellants= brief in opposition to the
motion for summary judgment indicating that, when Nickolas
sold the property, all the proceeds were temporarily placed in a joint checking
account, he used some of the proceeds to pay bills appellants owed, and the
amount left over was used to purchase the CD; and (2) Emma=s deposition in which she
stated she visited the citrus grove A[o]ften
enough to check on the fruit to see how it was doing.@[10]








We conclude the State has not met its burden of showing
there are no genuine issues of material fact and it is entitled to judgment as
a matter of law on its request to declare the 
McAllen property, the Starr County Ranch, and the CD as community
property, subject to joint management, control, and disposition.  See Nixon, 690 S.W.2d at 548.  We sustain appellants= issues four, five, and six.

Issue Eight: Striking of Appellants= December 13, 2000 Amended
Pleading

In issue eight, appellants argue the trial court erred in
striking their amended pleading filed December 13, 2000.  Appellants= December 13 pleading added a
new claim for breach of contract, based on allegations appellants and the State
had entered into a contract under which the State would release property in
Harris County from judgment liens if appellants would provide the State with
certain documents.  Appellants also added
a defensive issue based on that claim. 
Additionally, on December 13, 2000, appellants filed a motion to
disqualify the State=s attorneys on the ground they
would be material witnesses on the fact issue of whether an agreement had been
reached.  The State moved to strike the
counterclaim on the grounds that was Aan unconscionable, wholly meritless, bad faith, desperate, last-second attempt to try
and have the undersigned attorney disqualified from representing the State of Texas.@  The trial court struck the counterclaim and
the Adefensive use of >settlement= as a defense.@[11]

Texas Rule of Civil Procedure 63 provides in relevant part:








Parties may amend their pleadings . .
. by filing such pleas with the clerk at such time as not to operate as a
surprise to the opposite party; 
provided, that any pleadings, responses or pleas offered for filing within
seven days of the date of trial or thereafter, or after such time as may be
ordered by the judge under Rule 166, shall be filed only after leave of the
judge is obtained, which leave shall be granted by the judge unless there is a
showing that such filing will operate as a surprise to the opposite party.

 

Tex. R. Civ.
P. 63.

Absent an abuse of discretion, we will not overturn the
trial court=s decision to strike an amended
pleading.   See Hardin v. Hardin,
597 S.W.2d 347, 349 (Tex. 1980).  A trial
court, however,  has no discretion to
refuse an amendment to pleadings unless the opposing party presents evidence of
surprise or prejudice, or the amendment asserts a new cause of action or
defense, and thus is prejudicial on its face, and the opposing party objects to
the amendment.  Flo
Trend Sys., Inc. v. Allwaste, Inc., 948 S.W.2d 4,
7 (Tex. App.CHouston [14th Dist.] 1997, no
writ) (citing Greenhalgh v. Service Lloyds
Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990)). 
The burden of showing prejudice or surprise rests on the party resisting
the amendment.  Id. (citing Greenhalgh, 787 S.W.2d at 939).  Nevertheless, the trial court may conclude
the amendment on its face is calculated to surprise or that the amendment would
reshape the cause of action, prejudicing the opposing party and unnecessarily
delaying the case.  Id. (citing Greenhalgh, 787 S.W.2d at 940).

Given the accompanying motion to disqualify the State=s attorneys in the present case,
we conclude the trial court could have determined the amendment on its face was
calculated to surprise, prejudicing the State and unnecessarily delaying the
case.  The trial court did not abuse its
discretion in striking the amended counterclaim.

We overrule issue eight.

Issue Ten: Incorporation of Twenty-One
Additional Judgments








The final judgment, rendered October 23, 2002, in the
present case reads in part:  AIt is, therefore, ORDERED,
ADJUDGED, and DECREED that the State of Texas is entitled to a final judgment
for the unpaid judgments in the amount of $365,458.86 and attorneys fees in the
amount of $ CCC   , a total judgment of $ $365,458.86.@  The $365,458.86 is the total of the amount
owed on the judgment of forfeiture in the present case plus the amounts Emma
Barrera owes on judgments in twenty-one additional bond forfeiture cases, which
are not specifically enumerated in the final judgment at issue here.  In issue ten, appellants argue alternatively
(1) the trial court did not have plenary power to  reform or modify the previous final judgments
in the twenty-two cases because final judgment had been rendered in all cases
more than two years previously, or (2) if the twenty-two judgments were not Afinal@ until October 23, 2002, the
State=s request to determine status
of property and for turnover was premature and in bad faith.[12]

Appellants= argument overlooks the fact
the final judgment in the present case was in response to a request for
turnover pursuant to Civil Practice and Remedies Code section 31.002.  That statute authorizes collection of a previously
rendered judgment through a court proceeding. 
See Tex. Civ. Prac. & Rem. Code Ann. ' 31.002(a) (Vernon Supp.
2004).   Under section 31.002, the
judgment creditor, in this case the State, Amay move for the court=s assistance under this section
in the same proceeding in which the judgment is rendered or in an independent
proceeding.@  Id. ' 31.002(d).  Under section 31.002(d), then, there was
nothing to preclude the State from seeking the court=s assistance in collecting the
additional twenty-one judgments in the present proceeding.

Nevertheless, the trial court=s use of the phrase indicating
the State Ais entitled to a final judgment
for the unpaid final judgments,@ is inconsistent with the
nature of the proceeding and the relief sought by the State.  See 1A
Allen E. Smith, West=s
Texas Forms:  Creditors=
Remedies & Debtors=
Rights '27.3 (3d ed. 2000) (form for
judicial order for enforcement of money judgment).  The Afinal judgment@ in this case should not have
been for a monetary amount because final judgments had already been rendered
for all of the amounts encompassed by the Afinal judgment@ now before the court.  Instead, the Afinal judgment@ in the present case should
have authorized action by some entity to assist the State in collecting the
sums due on the earlier judgment of forfeiture in the present case and on the
twenty-one judgments in the additional cases, as specifically identified by
case number.  See id.  The final judgment before us is not in
proper form.








With the preceding caveat in mind, we overrule appellants= issue ten.

CONCLUSION

Having concluded the State failed to establish there were no
genuine issues of material fact and that it was therefore entitled to judgment
as a matter of law on the homestead and community property issues and on
appellants= counterclaim for slander of
title, we reverse the cause and remand for further proceedings consistent with
this opinion.

 

 

/s/      John S.
Anderson

Justice

 

 

Judgment rendered and Opinion
filed January 29, 2004.

Panel consists of Justices
Anderson, Seymore, and Murphy.[13]

Publish C Tex.
R. App. P. 47.2(b).











[1]  Citation was
served on Emma on August 15, 1990.  Her
answer was therefore due September 10, 1990. 
See Tex. R. Civ. P. 99(b), (c). 
The trial court rendered judgment no later than September 7, 1990.  In addition, the citation was filed with the
district clerk on August 29, 1990, so the earliest a default judgment could be
rendered was September 10, 1990.  See Tex. R. Civ. P. 107,
239.





[2]  In support,
they cite Mercer v. Phillips Natural Gas Co., 746 S.W.2d 933, 936 (Tex.
App.CAustin 1988, writ denied).





[3]   In their
discussion of lack of jurisdiction to render a particular judgment, McDonald
and Carlson state, AAlso void is a default judgment rendered before the
answer day on the citation.@  5 Roy W. Mcdonald
& Elaine G. Carlson, Texas Civil Practice ' 29.24 at 487 (1999) (citing Finley v. Howell,
320 S.W.2d 25, 28 (Tex. Civ. App.CTexarkana 1958, no writ)).  The cited authority, Finley v. Howell,
however, does not support the conclusion rendition of judgment before answer
day is a jurisdictional deficiency. 
Moreover, Finley is not binding on this court.





[4]  Plaza Court
was a mandamus proceeding, and this court held the trial court abused its
discretion when it ordered seizure of the businesses of the relator
corporations without establishing on the record the ownership interest of the
judgment debtors.  Plaza Court, Ltd.
v. West, 879 S.W.2d 271, 277 (Tex. App.CHouston
[14th Dist.] 1994, no writ).





[5]  As the Fifth
Circuit has observed, there is uncertainty among the Texas courts about how
aggressive trial courts can be in enforcing turnover orders affecting the
rights of non-judgment debtors.  See Maiz v. Virani, 311 F.3d 334,
343 & n.9 (5th Cir. 2002).





[6]  Indeed, the
only provision of the final judgment that purports to be a turnover order is
the provision ordering that the CD, Atogether
with any papers necessary to redeem or levy upon the certificate, shall be
turned over to the Constable of Harris County, Texas . . . .@  Although the
State, in its brief, argued we should apply an abuse-of-discretion standard, at
oral argument it conceded the summary judgment standards should be applied in
the present case.





[7]  In its first
summary judgment motion, in which it requested dismissal of appellants= counterclaim, the State argued only (1) appellants
were asking for a declaration on the same matter as was the State, (2) absence
of malice, fraudulent intent, or heedless and reckless disregard of appellants= rights (necessary for exemplary damages) was
conclusively proved, and (3) there was no evidence of malice, fraudulent
intent, or heedless and reckless disregard of appellants= rights.  Thus, the only grounds relevant to the
slander of title claim were those directed at punitive damages, and the State=s first summary
judgment motion did not challenge actual damages on the slander-of-title
claim.  A summary judgment movant cannot, on appeal, urge new grounds in support of
its summary judgment motion.  See
Bickers v. State, 646 S.W.2d 668, 670 (Tex. App.CDallas 1983, no pet.) (holding  that to allow new grounds for a summary
judgment to be urged on appeal without notice and opportunity to respond being
given to nonmovant, and without trial court having
opportunity to consider and rule on such grounds, would be contrary to what was
then Texas Rule of Civil Procedure 166‑A(c) authorizing summary judgment Aon the issues as expressly set out in the motion, or
in an answer or any other response.@).





[8]  The State does
not contend the Barreras= affidavits are not competent summary judgment
proof.  See Tex. R. Civ. P. 166a
(c) (stating interested witness=s affidavit may be basis of summary judgment if
affidavit is clear, positive, direct, free from contradictions, and readily
controvertible).





[9]  Texas Family
Code section 3.202 provides in part:

 

(a) A spouse=s
separate property is not subject to liabilities of the other spouse unless both
spouses are liable by other rules of law.

 

(b) Unless both spouses are personally liable as
provided by this subchapter, the community property subject to a spouse=s sole management, control, and disposition is not
subject to:

 

(1) any liabilities that the other spouse incurred
before marriage;  or

(2) any nontortious
liabilities that the other spouse incurs during marriage.

 

(c) The community property subject to a spouse=s sole or joint management, control, and disposition
is subject to the liabilities incurred by the spouse before or during marriage.

 

Tex. Fam. Code Ann. ' 3.202(a)B(c)
(Vernon 1998).

 

All property possessed during marriage is presumed to
be community property, and a party must prove the separate character of
property by clear and convincing evidence. 
See Tex. Fam.
Code Ann. ' 3.003(a), (b) (Vernon 1998).  Despite the clear and convincing trial
standard, at the summary judgment stage the court applies traditional summary‑judgment
jurisprudence in testing whether the evidence raises a genuine issue of
material fact.  See Huckabee v. Time Warner Entm=t.  Co., 19 S.W.3d 413, 421B22 (Tex.
2000) (discussing, in context of defamation case, difficulty in adapting review
under a heightened evidentiary standard to Texas summary judgment
practice).   

 





[10]  On appeal, the
State, without citation to the record, alleges it Asubmitted evidence that the Hidalgo County and Starr
County property was also managed by Emma Barrera because she paid bills for
such property, and she was involved in discing the
property, getting the property leveled for irrigation, keeping the ants off the
property, hiring help to take care of the property, inspecting the property to
check on the fruit, allowing neighbors to run cattle on the property, signing
mortgage papers for the property, agreeing to the sale of the Hidalgo County
property and allowing the sales proceeds of the citrus grove property to be
placed in their joint checking account.@  After reading all of the summary judgment
proof, we have cited in the text what we believe to be the State=s evidence in support of its motion.





[11]  The State also
moved for sanctions, but the trial court denied the motion.





[12]  Because we are remanding the case for
further proceedings, this issue is arguably moot.  Nevertheless, we address it because it may
arise again on remand.





[13]  Senior Chief
Justice Paul C. Murphy, sitting by assignment.