Marta A. LENTINO, Appellant,

v.

FROST NATIONAL BANK f/k/a Cullen Center Bank and Trust, Appellee,

Dov Avni Kaminetzky, Appellant,

v.

Frost National Bank f/k/a Cullen Center Bank and Trust, Appellee.

Nos. 14–02–00519–CV, 14–02–00520–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 4, 2003.

Rehearing Overruled Jan. 29, 2004.

25. *See State ex. rel. Hill v. Pirtle,* 887 S.W.2d 921 (Tex.Crim.App.1994).

26. *Id.*

Marta A. Lentino, Houston, for appellant.

David A. Furlow, Dov Avni Kaminetzky, Willard P. Conrad, Richard T. Howell, Jr., Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

EDELMAN, Justice.

Marta A. Lentino and Dov Avni Kaminetzky each appeal various orders of the trial court on numerous grounds. Because we can find no final judgment in the record for this case, we dismiss the appeals for lack of jurisdiction.

## Background

In 1999, Lentino (and eight other plaintiffs)[1] filed suit against Frost National Bank, f/k/a Cullen Center Bank and Trust ("Frost") for wrongfully obtaining post-judgment remedies against the property of persons and entities that were not parties or judgment debtors in the underlying case. In 2000, Frost filed a counterclaim to recover attorney's fees against Lentino for filing groundless pleadings. In February of 2001, Kaminetzky intervened, seeking recovery of compensation from some of the plaintiffs (excluding Lentino) for services he allegedly rendered as a trustee and investment agent.

On May 24, 2001, Lentino filed a motion to nonsuit all of her claims against Frost, and the trial court entered an order granting this nonsuit on June 1, 2001 (the "June order"). However, on May 28, 2001, Lentino filed a counter-counterclaim to Frost's counterclaim, seeking sanctions for discovery abuse. On June 11, 2001 (and subsequently), Lentino supplemented her coun-

---

**1.** Lentino is the only former plaintiff who is a     party to this appeal.

ter-counterclaim to assert claims for fraud, misrepresentation, and conspiracy based on facts similar to those she had alleged in her nonsuited claims.[2] By February of 2002, among other things that had occurred in the case, Frost had filed, and the trial court had granted, a motion to nonsuit Frost's claims and to strike Kaminetzky's reintervention[3] (the "February order").

## Existence of Final Judgment

■ With exceptions not applicable here,[4] an appeal may be taken only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). In cases such as this, where only one final, appealable judgment can be rendered and a judgment has been issued without a conventional trial, the judgment is final only if it either actually disposes of all claims and parties before the court, or it states with unmistakable clarity that it is a final judgment. *Guajardo v. Conwell*, 46 S.W.3d

862, 863–64 (Tex.2001); *Lehmann*, 39 S.W.3d at 192, 200.[5]

■ Within the record of this case, we have found various orders which dispose of discrete portions of the case but none which either: (1) unequivocally expresses an intent to finally dispose of the case; or (2) effects an actual disposition of all parties and claims remaining in the case at the time the order was signed.[6] Frost argues that either the June order (granting the Lentinos' motion for nonsuit) or the February order (granting Frost's motion to nonsuit its counterclaim and strike Kaminetzky's reintervention) disposed of all claims and parties remaining in the case at the time each order was entered. However, neither order has language purporting to dispose of any claims or parties other than those specifically addressed, and our record does not contain another order that had been signed: (1) by the time of the June order disposing of Frost's counterclaim, Kaminetzky's intervention,[7] or Lentino's counter-counterclaim

2. Among other things, the counter-counterclaim alleged that Frost misrepresented to the court in the prior action that: (1) a debt existed, whereas Frost's former Senior Vice President admitted that there was no debt; and (2) Frost had standing to seize the assets when its merger with the original lending bank had not yet been consummated.

3. *See infra*, note 7.

4. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp.2003).

5. Because the law does not require a final judgment to be in any particular form, whether a judicial decree is a final judgment for purposes of appeal must be determined from its language and the record in the case. *Lehmann*, 39 S.W.3d at 195. Thus, language that the plaintiff take nothing or that the case is dismissed shows finality if there are no other claims by other parties. *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex.2002). However, if all claims and parties have not actually been disposed, use of a "mother hubbard" clause or the term "final" is not sufficient to confer

finality unless the intent to finally dispose of the case is otherwise unequivocally expressed in the words of the order. *Lehmann*, 39 S.W.3d at 200–01, 203–06.

6. Nor have we found a severance or other order that caused any order to become final.

7. The record is unclear regarding the disposition of Kaminetzky's original intervention. According to Lentino's brief, it was stricken on June 4, 2001. Conversely, according to Frost's brief and a discussion reflected in the reporter's record of the August 17, 2001 sanctions hearing, it was nonsuited by an order signed on June 20, 2001. However, the parties have not cited, and we have not found, any location in our record containing an order disposing of Kaminetzky's intervention until February of 2002. Without a written order granting the nonsuit, the periods for the trial court's plenary power and appellate deadlines do not commence to run. *See In re Bennett*, 960 S.W.2d 35, 38 (Tex.1997).

(filed on May 28 and later supplemented); or (2) by the time of the February order (or thereafter) disposing of Lentino's counter-counterclaim.[8]

■ Frost contends that Lentino's counter-counterclaim was waived and is thus of no effect in this case because it was filed after Lentino had nonsuited her claims and thereby required a motion to reinstate in order to be effective. In a case where no other party has a claim for affirmative relief pending, the nonsuit of a plaintiff's claims effects a dismissal of the entire lawsuit and thus requires the filing of either a motion to reinstate the action or an entirely new lawsuit in order to provide a proceeding in which the claims can be reasserted.[9] However, where another party has a claim pending for affirmative relief, a nonsuit does not bring about a dismissal of the entire case.[10] In that event, where the lawsuit remains active, the parties have not cited, and we have not found, any authority requiring a former plaintiff to file a motion to reinstate or new lawsuit in order to reassert previously nonsuited claims.

In this case, at the time Lentino filed her nonsuit, other claims were still pending in Kaminetzky's intervention and Frost's counterclaim that prevented Lentino's nonsuit from effecting a dismissal of the entire action. To whatever extent, if any, Lentino's counter-counterclaim can be considered to have reasserted any of her nonsuited claims, it did not seek to reassert them in her capacity as an original plaintiff in the case, but only as a counter-plaintiff. In that her nonsuit did not terminate the entire case and her nonsuited claims, if reasserted at all, were not sought to be restored to their previous status, we can find no rationale (as well as no authority) for subjecting her counter-counterclaim to a requirement to file a motion to reinstate, *i.e.*, as contrasted from the rules generally governing the filing of a counterclaim.

■ Even if her counter-counterclaim was deficient for failing to file a motion to reinstate, a question would remain as to the effect of that failure on the status of the counter-counterclaim. If the result was that the counter-counterclaim should thereby simply be ignored and given no effect, and without any motion or ruling so indicating or determining, as Frost contends, then it would seemingly have been possible for a final judgment to be entered in the case on Frost's claims that would not only not dispose of the counter-counterclaim but possibly also present a res judicata bar to filing it in another action.[11]

---

**8.** The trial court's remarks at the hearing on February 18, 2002, reflect an understanding that all claims in the case either had previously been nonsuited or were being nonsuited that day. Although Lentino made reference to her counter-counterclaim during this hearing, she did not explain clearly how it was still pending in the case.

**9.** *Ashpole v. Millard*, 778 S.W.2d 169, 171 (Tex.App.—Houston [1st Dist.] 1989, no writ) (recognizing that once a *case* is dismissed, no further action may be had in that *cause* and any further action requires either a new lawsuit or a motion to reinstate); *United States Fid. & Guar. Co. v. Beuhler*, 597 S.W.2d 523, 524 (Tex.Civ.App.—Beaumont 1980, no writ)

(holding that the filing of an amended pleading following the dismissal of a *case* could not vacate the order of dismissal and reinstate the *case* on the trial court's docket).

**10.** *See BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840, 842 (Tex.1990) (holding that, because ANR's counterclaim stated a claim for affirmative relief, the trial court did not err in refusing to dismiss the entire case upon BHP's motion for nonsuit); *see also* TEX. R. CIV. P. 162.

**11.** *See, e.g., State and County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex.2001) (recognizing that the transactional approach to res judicata requires a defendant to bring

 

Such an approach would also be contrary to the general rules (and policies) that: (1) pleading defects of all kinds are waived if not excepted to in writing and presented to the trial court;[12] and (2) even where exceptions to pleading defects are sustained, a party must be given an opportunity to correct the defects before suffering adverse consequences.[13] In the absence of clear authority dictating such incongruous results, we decline to adopt Frost's contention. Instead, we conclude that there is no final judgment in our record of this case and, accordingly, dismiss Lentino's and Kaminetzky's appeals for lack of jurisdiction.

---

as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit).

**12.** See TEX. R. CIV. P. 90.

**13.** See Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex.1998).