Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion
filed May 22, 2008








Affirmed
in Part, Reversed and Remanded in Part, and Memorandum Opinion filed May 22,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00673-CV

____________

 

SUSANA RAQUEL SHAFER AND CYNTHIA
VICTORIA LENTINO, MARTA A. LENTINO INDIVIDUALLY, MARTA A. LENTINO AS ASSIGNEE
OF FABIOLA VANESA LENTINO, MICHELLE MARIE LENTINO, NATALIA LENTINO, AND THE
EDUARDO P. LENTINO CHILDREN'S TRUST AND MARTA A. LENTINO AS AGENT OF MARIA
RAQUEL LENTINO, Appellants

 

V.

 

FROST NATIONAL BANK F/K/A CULLEN
CENTER BANK AND TRUST, Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 99-09390

 



 

M E M O R A N D U M  O P I N I O N








Appellants Susana Raquel Shafer, Cynthia Victoria Lentino,
Marta A. Lentino Individually, Marta A. Lentino as assignee of Fabiola Vanesa
Lentino, Michelle Marie Lentino, Natalia Lentino, and the Eduardo P. Lentino
Children=s Trust, and Marta
A. Lentino as agent of Maria Raquel Lentino, (collectively, Athe Lentinos@) appeal from a
take-nothing summary judgment in favor of appellee Frost National Bank f/k/a/
Cullen Center Bank and Trust (AFrost Bank@).[1] 
We affirm the judgment in favor of Frost Bank on all claims, and as against all
parties, with the exception of Marta Lentino, individually, on her claim of
fraudulent representation of the facts related to the merger between Cullen
Center Bank and Trust (ACullen Bank@) and Frost Bank. 
As to Marta Lentino=s claim (in Marta=s individual
capacity) of fraudulent representation of the facts related to the merger between
Cullen Bank and Frost Bank, we reverse the trial court=s judgment, sever
that claim,  and remand only that claim to the trial court for further
proceedings.

I.  Factual and Procedural
Background

This case has its genesis in the 1980s when Eduardo Lentino
and Jorge Lentino obtained a series of loans from Frost Bank=s predecessor,
Cullen Bank.  These loans and Eduardo=s and Jorge=s subsequent
defaults have generated multiple lawsuits and appeals.

The 1991 lawsuit.  In 1991, Cullen Bank sued
Eduardo, Jorge, and Marta based on Cullen Bank=s post-judgment
discovery of allegedly fraudulent transfers during the time the parties were
executing compromise settlement agreements.  The 1991 lawsuit generated two
appeals to this court.[2]









The present lawsuit.  In 1999, multiple plaintiffs,
including Marta, Cynthia Lentino, and Susana Shafer, initiated the case now
under review.  This case already has generated one appeal.[3]


The bill of review.  On February 20, 2004, while the
present case was pending in the trial court after dismissal of the appeal,
Marta and Eduardo, individually and as assignee of Jorge=s claims, filed a
petition for an equitable bill of review seeking to set aside the post-answer
default judgment rendered in the 1991 case.  The 2004 bill-of-review proceeding
also has generated an appeal.[4] 
The appellate opinions generated by the 2004 bill-of-review proceeding and the
1991 lawsuit contain detailed renditions of the history underlying the present
lawsuit, and therefore we do not repeat the factual history here.  See
2007 WL 2198827, at *1; 2002 WL 220421, at *1B5; 919 S.W.2d at
744B45.  The
procedural history of the present case is summarized in the previous appeal in
this case.[5] 
We now detail the contents of the pleadings for purposes of the instant appeal.








In their original petition in the present case, the
Lentinos alleged wrongful seizure of property to satisfy the judgment in the
1991 lawsuit.  Frost Bank answered with a general denial and asserted the
plaintiffs= lack of entitlement to sue in the capacity in which
they sued, defect of parties, limitations, claim preclusion, and issue
preclusion.  Frost Bank subsequently filed an Aoriginal
counter-claim,@ alleging the Lentinos= pleadings were
groundless and requesting attorneys= fees and costs as
sanctions.  The Lentinos then amended and supplemented their petition,[6]
alleging, inter alia, Frost Bank=s purported lack
of standing and insufficient evidence to show Frost Bank acquired the claims
against the Lentinos.  On May 24, 2001, the Lentinos moved to non-suit all
their claims, and the only disputed issue at that point was Frost Bank=s counterclaim for
attorneys= fees and costs.

The Lentinos, however, filed on May 28, 2001, a Acounter-counterclaim,@ in which they
alleged the following Aspecific counter-counterclaims@:  violations of
discovery rules, Frost Bank=s Aabuse and
resistence to discovery,@ and infliction of undue hardship, malice
and bad intent in shifting another party=s liability for
attorneys= fees to the Lentinos.  In other parts of the same
pleading, the Lentinos alleged (1) lack of proof of a consummated merger
between Cullen Bank and Frost Bank and Frost Bank=s resultant lack
of standing and (2) Frost Bank=s alleged fraud and misrepresentation of
the date it learned of Eduardo=s and Jorge=s transfers of
assets into two living trusts.

On June 1, 2001, the trial court granted the Lentinos= motion for
non-suit of their claims.  Ten days later, on June 11, 2001, the Lentinos filed
a Afirst supplemental@ to their
counter-counterclaim.[7] 
They alleged common law fraud and misrepresentation, referring to when Frost
Bank allegedly knew of Eduardo=s and Jorge=s transfers.

On August 17, 2001, the court heard Frost Bank=s motion for
sanctions.  The trial court found (1) Marta, in her capacity as trustee of the
children=s living trust, brought
the action for an improper purpose and (2) the pleadings were filed on a
groundless basis.  The court then awarded Frost Bank attorneys= fees and $14,000
in sanctions.








Several months later, on January 18, 2002, Marta filed a Asecond
supplemental@ to her counter-counterclaim.  She alleged common law
fraud and misrepresentation based on Frost Bank=s having portrayed
itself as successor by merger to Cullen Bank and as the holder in due course of
the notes.  On the same date, Marta, individually, and as assignee of the
claims of the Eduardo P. Lentino Children=s Trust, Fabiola
Vanesa Lentino and Michelle Marie Lentino, filed a Athird supplemental@ to her
counter-counterclaim.[8] 
She alleged conspiracy based on a Rule 11 agreement between Frost Bank and the
other Lentinos.[9]

On January 28, 2002, Marta filed a Afirst amended
claim and petition in re-intervention in her individual capacity.@  She alleged the
following Aaffirmative causes of action@ against Frost
Bank:  (1) common law fraud for obtaining a $5 million judgment on a
non-existent debt; (2) malicious fraud for suing on a 1984 note when the suit
was barred by limitations; (3) common law fraud for misrepresenting its
standing as a successor by merger to Cullen Bank; (4) civil conspiracy to
depict Marta as a Agroundless pleader@; (5) malice and
ill intent in obtaining an amendment of judgment in federal district court; and
(6) civil conspiracy with the attorney for the E.P. Lentino Children=s trust.[10]








On February 8, 2002, Marta, individually and as assignee of
the Trust, Fabiola, Michelle, and Natalie, filed her Afirst supplemental
to her amended claim and petition in reintervention in her individual capacity.@  Marta alleged
the following Aaffirmative causes of action@:  (1) common law
fraud, individually and as assignee, based on Frost Bank=s (a)
representation of its standing as successor by merger to Cullen Bank and (b)
concealment and inconsistencies in its books; (2) negligence and contributory
negligence by raising litigation costs and litigation fees; (3) civil
conspiracy by precluding appeal; (4) malice in precluding appeal; and (5)
estoppel by fraud and illegality based upon Frost Bank=s allegedly not
carrying the claims against the Lentinos on its books.[11]

On February 14, 2002, this court affirmed the trial court=s post-answer
default judgment in favor of Frost Bank in the 1991 case.  On the same date,
Frost Bank moved to non-suit its original counterclaim.  A few days later, on
February 18, 2002, the trial court granted Frost Bank=s non-suit and
entered an order striking the intervenor=s claims.[12] 
Marta appealed, and, on November 4, 2003, this court dismissed the appeal for
want of jurisdiction because there was no order disposing of Marta=s
counter-counterclaims.  See 159 S.W.3d at 652, 655.

Marta then filed four motions for summary judgment.  She
captioned the first as a combined no-evidence and Aconventional@ motion.  She
captioned the other three as no-evidence motions.  She also filed a Asecond
supplemental to her amended claim,@ in which she,
individually and as assignee, (1) alleged fraudulent transfer of stock in
violation of the Texas Uniform Fraudulent Transfer Act,[13]
(2) pleaded the discovery rule and estoppel to any limitations defense, and (3)
alleged Frost Bank was not the holder in due course of Cullen Bank=s claims.

The trial court denied Marta=s summary-judgment
motions.  On November 22, 2005, Frost Bank filed a first amended motion for
summary judgment.  Marta filed objections, special exceptions, and a response
to Frost Bank=s motion.








After hearing argument, the trial court granted Frost Bank=s motion for
summary judgment, denied Marta=s objections and special objections, and
rendered final judgment disposing of all claims of all parties.  Susana Shafer,
Cynthia Lentino, and Marta Lentino, individually and as assignee and agent,
have appealed from this judgment.

Three groups of appellants are before this court.  They are
(1) Marta, individually, pro se; (2) Marta as Aassignee@ of Fabiola,
Michelle,  Natalia, and the Trust, and as Aagent@ of Maria; and (3)
Susana and Cynthia, each pro se.

                                       II. 
The Pro Se Appellants

As parties, Marta, Susana, and Cynthia may each appear in
their own persons, and each may prosecute or defend her own rights.  See
Tex. R. Civ. P. 7.  (AAny party to a
suit may appear and prosecute or defend his rights therein, either in person or
by an attorney of the court.@).  Because they are not attorneys,
however, they may not represent others.  See In re Moody, 105 B.R. 368,
370 (S.D. Tex. 1989) (stating unlicensed non-attorneys are not permitted to
represent anyone other than themselves).  Thus, Marta, who is not licensed to
practice law, may not represent or defend the rights of Maria, Susana, or
Cynthia.








Under the circumstances presented in this case, Marta also
may not pursue the assigned claims of Fabiola, Michelle, Natalia, and the
Trust, all of whom assigned their claims to Marta in exchange for the right to
receive 85% of any recovery by Marta.  The assignment documents contain
language indicating that Marta, a nonlawyer, will be representing the assignors
herself in prosecuting the assigned claims.  Marta would be engaging in the
unauthorized practice of law if she were allowed to pursue the assigned claims
under these circumstances.  See Brown v. Unauthorized Practice of Law Comm=n, 742 S.W.2d 34,
42 (Tex. App.CDallas 1987, writ denied) (AEntering into
contracts with persons to represent them in their personal injury and/or
property damage matters on a contingent fee together with an attempted
assignment of a portion of the person=s claim involves
the practice of law.@); Gray v. Estell, No.
05-98-01785-CV, 2001 WL 279181, at *3 (Tex. App.CDallas Mar. 22,
2001, no pet.) (not designated for publication) (upholding trial court=s determination
that assignment of action was used to aid appellant in unauthorized practice of
law and concluding trial court therefore had power to disregard assignment and
exclude appellee from participation in lawsuit); Iowa Supreme Court Comm=n on Unauthorized
Practice of Law v. A-1 Assocs., Ltd., 623 N.W.2d 803, 808 (Iowa 2001) (holding
assignment was not a bona fide assignment permitting assignee=s pro se
representation when assignor retained interest in underlying debt).  A person
may not engage in the unauthorized practice of law.  See Tex. Penal Code Ann. ' 38.123 (Vernon
2003).[14] 
Accordingly, we consider Marta=s arguments only to the extent these
arguments relate to her own claims or rights.  We do not consider any arguments
made in Marta=s purported capacity as agent or assignee and
pertaining solely to the rights or claims of persons other than Marta.  Cf.
Jimison v. Mann, 957 S.W.2d 860, 861 (Tex. App.CAmarillo 1997, no
writ) (per curiam) (striking documents filed by layperson having no authority
to file them on behalf of another).








Susana and Cynthia, although appearing pro se, have
adopted the brief and reply brief of Marta, Ain her capacity as
Assignee@ of Fabiola=s, Michelle=s, and Natalia=s claims.[15] 
AAny party may join
in or adopt by reference all or any part of a brief, petition, response,
motion, or other document filed in an appellate court by another party in the
same case.@  Tex. R. App.
P. 9.7.  As discussed above, however, we do not consider Marta=s arguments as
they relate solely to the claims of  Fabiola, Michelle, and Natalia.  With
these limitations in mind, we proceed to the merits of the appeal.

III.  Issues and Analysis

A.      Did the trial court err in
granting Frost Bank=s summary-judgment motion?

 








In her first, second, third, fifth, sixth, ninth, and
twelfth issues, Marta challenges the trial court=s grant of Frost
Bank=s motion for
summary judgment and the denial of her own motions for summary judgment.[16] 
Although Marta raised numerous claims in multiple pleadings in the trial court,
a liberal reading of her appellate argument in support of these seven issues
indicates she is challenging the judgment against her based on the following
fraudulent-representation claims:  (1) Frost Bank fraudulently established its
standing in the 1991 suit by representing it had merged with Cullen Bank and
had acquired Cullen Bank=s interest in the defaulted loans, and (2)
Frost Bank fraudulently represented it first learned of Eduardo=s and Jorge=s transfers of
assets to the living trusts in 1991.[17] 
Frost Bank presented traditional summary-judgment arguments in response to
these claims, asserting claim preclusion and issue preclusion barred both
claims.[18]








In reviewing a traditional summary judgment, we consider
whether the successful movant at the trial level carried its burden of showing
there is no genuine issue of material fact and judgment should be granted as a
matter of law.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999). To be entitled to summary judgment, a
defendant conclusively must negate at least one essential element of each of
the plaintiff=s claims or conclusively establish each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997).  If the
movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  When, as in
this case, the order granting summary judgment does not specify the grounds
upon which the trial court relied, we must affirm the summary judgment if any
of the independent summary-judgment grounds is meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). 

In its summary-judgment motion, Frost Bank contended the
doctrines of claim preclusion and issue preclusion barred Marta=s claims of Afraudulent
establishment of standing@ and fraudulent representation of Frost
Bank=s knowledge of
when it first learned of Jorge=s and Eduardo=s transfers of
assets to the trusts.  The general doctrine of res judicata encompasses two
principal categories:  (1) claim preclusion (also known as res judicata);  and
(2) issue preclusion (also known as collateral estoppel).  Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992).  Claim preclusion
and issue preclusion are affirmative defenses, and the party asserting either
such defense therefore has the burden of pleading and proving the elements of the
asserted defense.  Welch v. Hrabar, 110 S.W.3d 601, 606 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).








A party
asserting claim preclusion must establish the following elements:  (1) a prior
final judgment on the merits by a court of competent jurisdiction;  (2)
identity of parties or those in privity with them;  and (3) a second action
based on the same claims that were raised or could have been raised in the
first action.  Id.  A party asserting issue preclusion must establish
(1) the facts sought to be litigated in the second action were fully and fairly
litigated in the first action; (2) those facts were essential to the judgment
in the first action;  and (3) the parties were cast as adversaries in the first
action.  Id.  Strict mutuality of parties is not required.  Id. at
607.  In short, claim preclusion prevents the relitigation of adjudicated
claims or claims that could have been raised, and issue preclusion bars the
relitigation of adjudicated essential facts.  Id.

Frost Bank submitted the following summary-judgment proof
to support its defenses of claim preclusion and issue preclusion:  (1) the
February 29, 2000 post-answer default judgment and final order of severance in
the 1991 case, (2) the trial court=s order of
severance, (3) the February 14, 2002 opinion of this court affirming the
judgment, and (4) the supreme court order denying the petition for review.  In
the February 29, 2000 judgment, the trial court assumed Frost Bank=s merger with
Cullen Bank, but the document is silent on whether the issue was litigated in
the trial court (e.g., AFrost National Bank, National Banking
Association successor to Cullen Center Bank & Trust, has proved its damages
. . . .@).  According to
this court=s February 14, 2002 opinion, however, the pleadings in
the trial court included Aa plea in abatement alleging Frost Bank=s lack of >standing,= to act as a
successor to Cullen.@  2002 WL 220421, at *4.  On appeal, Marta
initially argued the trial court Aerred in not
ruling on [the] motion to abate, which alleged Frost Bank had not demonstrated
its >standing= to sue.@  Id. at
*8.  In her reply brief, however, Marta stated she was discussing Alack of capacity,@ and this court
construed her argument to be addressed to Frost Bank=s capacity to sue,
rather than its standing.  Id.

In support of her sixth issue, Marta argues in part, AWhen material
facts have changed or facts were concealed[,] a judgment can not be res
judicata as to a subsequent action the rationale being that no judgment can
affect subsequent arising rights and duties of the parties.@  In her response
to Frost Bank=s summary-judgment motion, Marta alleged Frost Bank
was Anot addressing
that the lack of opportunity to litigate in the initial action (by Marta only)
is due among others [sic] to the concealment of material information by Frost.@








The merger/standing claim.  There is nothing
in Frost Bank=s summary-judgment proof conclusively establishing the
third element of claim preclusion, i.e., that Marta litigated a claim of
fraudulent representation regarding merger (and thus standing) or that she
could have raised such a claim in the 1991 lawsuit.[19] 
As to issue preclusion, the summary-judgment record contains no proof
conclusively establishing that the facts relevant to fraudulent representation
of standing were fully and fairly litigated in the 1991 lawsuit.[20] 
We therefore conclude the trial court erred in granting summary judgment
against Marta on her claim of Frost Bank=s fraudulent
representation of facts underlying the issue of the merger as it relates to
standing.








Frost Bank=s discovery of the
transfers.  The judgment in the 1991 lawsuit contains the trial court=s finding that
Frost Bank/Cullen Bank Adid not discover nor in the reasonable
exercise of diligence should have discovered the Lentinos= fraud, fraudulent
transfers, and breach of contract [of Eduardo and Jorge Lentino] on or prior to
May 3, 1987.@  Thus, the issue of when Frost Bank learned of the
alleged fraudulent transfers was litigated in the 1991 lawsuit, and the court=s findings do not
reflect any reliance on an alleged misrepresentation that Frost Bank did not
learn of the transfers until 1991.[21] 
Frost Bank conclusively established its defense of issue preclusion in relation
to this issue.  We therefore conclude the trial court did not err in granting
summary judgment against Marta on her claim of Frost Bank=s allegedly
fraudulent representation of when it discovered the transfers.

In sum, we conclude Frost Bank did not conclusively establish
its affirmative defenses of either claim preclusion or issue preclusion in
relation to Marta=s claim that Frost Bank fraudulently
represented the facts regarding the merger between Cullen Bank and Frost Bank.  The
trial court therefore erred in granting summary judgment against Marta and for
Frost Bank on that claim, and we sustain Marta=s sixth issue only
as it relates to that claim.  We overrule Marta=s sixth issue as
it relates to any other claim against Frost Bank.

We conclude that the summary-judgment proof did not
conclusively establish any of the matters that Marta asserts were conclusively
proved in her first and third issues.[22] 
Accordingly, we overrule Marta=s first and third issues.








Because we hold Frost Bank did not conclusively establish
its defenses of claim preclusion or issue preclusion on Marta=s claim that Frost
Bank fraudulently represented the facts related to the merger between Cullen
Bank and Frost Bank, we have sustained Marta=s sixth issue
solely as it relates to that claim.  We therefore need not address Marta=s second and fifth
issues, which involve only that claim.  Likewise, we need not address her ninth
and twelfth issues as they relate to that claim.  We overrule Marta=s ninth and
twelfth issues as they relate to Marta=s claim that Frost
Bank fraudulently represented when it learned of Jorge=s and Eduardo=s transfers of
assets to the trusts.

B.      Do material fact issues
exist precluding summary judgment (issues nine and twelve)? 

 

In her ninth and twelfth issues, Marta argues material fact
issues exist regarding (1) whether Frost Bank had consummated its merger with
Cullen Bank, (2) the extent of the Lentinos= damages, (3)
whether transfer of Frost Bank=s stock to Cullen BLP, Inc. left Frost
Bank with unreasonably small capital, and (4) what punitive damages are to be
assessed for false statements asserted by Frost Bank that it did not learn of
the transfer of assets to the E.L. and J. L. York Plaza Living Trusts until it
took Eduardo Lentino=s deposition in 1991.  Marta then contends
the trial court erred in granting summary judgment (issue nine) and denying her
a jury trial (issue twelve).

Because we have reversed and remanded Marta=s claim of fraudulent
representation of facts establishing merger, we do not address alleged fact
issues one and two.  Because we have concluded Frost Bank conclusively
established its defense of issue preclusion in relation to discovery of Eduardo=s and Jorge=s transfers of
assets, we overrule Marta=s ninth and twelfth issues in relation to
alleged fact issue four.  

We now address alleged fact issue three, which is based on
Marta=s Asecond
supplemental to her amended claim against Frost,@ filed in
September 2005.  In that pleading, Marta alleged Frost Bank fraudulently
transferred stock in 2000 to Cullen BLP in violation of the Texas Uniform
Fraudulent Transfer Act.[23] 
In its summary-judgment motion, Frost Bank invoked Marta=s representation
that Frost Bank=s stock was reconveyed to Cullen/Frost
Bankers, Inc., at the end of 2003.  The Uniform Fraudulent Transfer Act
provides the following remedies:








(a) In an action for relief against a transfer or obligation under this
chapter, a creditor, subject to the limitations in Section 24.009 of this code,
may obtain:

(1) avoidance of the transfer or obligation to the
extent necessary to satisfy the creditor=s claim;

(2) an attachment or other provisional remedy
against the asset transferred or other property of the transferee in accordance
with the applicable Texas Rules of Civil Procedure and the Civil Practice and
Remedies Code relating to ancillary proceedings;  or

(3) subject to applicable principles of equity and
in accordance with applicable rules of civil procedure:

(A) an injunction against further disposition by the
debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the
asset transferred or of other property of the transferee;  or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the
debtor, the creditor, if the court so orders, may levy execution on the asset
transferred or its proceeds.

 

Tex. Bus. & Com. Code Ann. ' 24.008 (Vernon
2002).  If, as represented by Marta, the stock that was allegedly fraudulently
transferred by Frost Bank in 2000, was reconveyed back to Frost Bank at the end
of 2003, then, as a matter of law, there is no remedy available for the alleged
fraudulent transfer.  See id.  

To the extent we address the purported material fact issues
Marta lists in her ninth and twelfth issues, we overrule those issues.

C.      Did the trial court
incorrectly rule on Marta=s special exceptions (issues four, seven, and
eight)?

 








In issue four Marta contends A[t]he trial court
erred in denying LENTINO=s timely objections and special exceptions
to FROST=s first amended
motion for summary judgment.@  Marta presents no argument in support of
this issue.  Marta=s briefing on this point is deficient and
thus she has waived this alleged error on appeal.  Tex. R. App. P. 38.1(h) (requiring appellant=s brief to contain
clear and concise argument for contentions made, with appropriate citations to
authorities and record); Sterling v. Alexander, 99 S.W.3d 793, 799 (Tex.
App.CHouston [14th
Dist.] 2003, pet. denied).  We overrule Marta=s fourth issue.

In issue seven, Marta contends the trial court erred Ain granting
summary judgment in the absence of special exceptions to Appellants= pleadings and
disregarding FROST needed to conclusively establish the absence of any genuine
question of material fact in order to be entitled to judgment as a matter of
law.@  In issue eight,
Marta contends the trial court erred Ain granting a no
cause of action summary judgment without giving Appellants non movants adequate
opportunity to amend to plead a viable cause of action.@  

A party should not circumvent the protective features of
the special exception procedure by urging a motion for summary judgment on the
pleadings or by other means when a plaintiff=s pleadings fail
to state a claim.  Centennial Ins. Co. v. Commercial Union Ins. Cos.,
803 S.W.2d 479, 482 (Tex. App.CHouston [14th Dist.] 1991, no writ). 
When, however, a defendant argues  and presents summary-judgment proof
establishing the plaintiff has no viable claim, summary judgment is not on the
pleadings, and the law requires neither special exceptions nor a remand so the
appellant may replead.  See Huffine v. Tomball Hosp. Auth., 979 S.W.2d
795, 802 (Tex. App.CHouston [14th Dist.] 1998, no pet.). 
Frost Bank directed its summary-judgment motion to each of the Lentinos= pleadings.  With
regard to each claim, Frost Bank argued either the negation of one or more
elements or the establishment of an affirmative defense.  Frost Bank attached
summary-judgment proof in support of its arguments.  As in Huffine,
summary judgment was not on the pleadings.  The trial court therefore correctly
overruled Marta=s objections to Frost Bank=s summary-judgment
motion and correctly denied her request to replead.  Accordingly, we overrule
Marta=s seventh and
eighth issues.








D.      Did the trial court abuse
its discretion when it denied the Lentinos= motion for new trial (issue ten)?

 

In her tenth issue, Marta argues the trial court erred when
it denied her motion for new trial after it had taken judicial notice of
evidence not controverted by Frost Bank.  Her arguments in support of this
issue all relate to her claim that Frost Bank fraudulently represented the
facts necessary to establish the merger between Frost Bank and Cullen Bank. 
Because we have reversed judgment on this claim and remanded it, we need not
address Marta=s tenth issue.

E.      Did the trial court err by
not issuing findings of fact and conclusions of law (issue eleven)?

In her eleventh issue, Marta contends the trial court erred
by not issuing findings of fact and conclusions of law.  Her argument, however,
focuses on the trial court=s not having made findings of fact. 
Findings of fact are not proper in a summary-judgment context.  Baker Hughes
Oilfield Operations, Inc. v. Hennig Prod. Co., 164 S.W.3d 438, 442 (Tex.
App.CHouston [14th
Dist.] 2005, no pet.).  We find no merit in Marta=s argument and
overrule Marta=s eleventh issue.

IV.  Conclusion

We sustain Marta=s sixth issue
solely as it relates to her claim, in her individual capacity, of fraudulent
representation of the facts related to the merger between Cullen Bank and Frost
Bank.  We overrule Marta=s sixth issue as it relates to any other
claim or party.  We overrule Marta=s first, third,
fourth, seventh, eighth, and eleventh issues, and also overrule her ninth and
twelfth issues to the extent we address them.  We do not address Marta=s second, fifth,
and tenth issues.








Accordingly, we affirm the judgment in favor of Frost Bank
on all claims, and as against all parties, with the exception of the claim of
fraudulent representation of the facts related to the merger between Cullen
Bank and Frost Bank asserted by Marta Lentino, individually.  We sever and
remand only that claim to the trial court for further proceedings consistent
with this opinion.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 22, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.









[1]  When necessary to refer to an individual party we
use as much of that person=s or entity=s name as is necessary for identification.  In
discussing the arguments, we refer to Marta because she argued the case below
and is the author of the only substantive brief on appeal.  We refer to Frost
Bank=s predecessor, Cullen Bank, when necessary in
discussing the issues related to merger.





[2]  Lentino v. Cullen Center Bank and Trust, 919 S.W.2d 743, 745, 747 (Tex.
App.CHouston [14th Dist.] 1996, writ
denied) (reversing summary judgment in favor of bank in Harris County case
number 91-188878 and remanding); Lentino v. Cullen Center Bank and Trust
n/k/a Frost Nat=l Bank, No. 14-00-00692-CV, 2002 WL 220421
(Tex. App.CHouston [14th Dist.] Feb. 14, 2002,
pet. denied) (not designated for publication) (affirming post-answer default
judgment rendered February 29, 2000, in favor of bank on remand in Harris
County case number 91-188878).





[3]  Lentino v. Frost Nat=l Bank, 159 S.W.3d 651 (Tex. App.CHouston [14th Dist.] 2003, no pet.) (dismissing for
want of jurisdiction due to lack of final trial court order disposing of all
claims and all parties).





[4]  Lentino v. Frost Nat=l Bank f/k/a/Cullen Center Bank and Trust, No 14-05-01179-CV, 2007 WL
2198827 (Tex. App.CHouston [14th Dist.] Aug. 2, 2007,
pet. denied) (mem. op.) (affirming summary judgment in favor of Frost Bank in
Harris County Case number 04-08487). 





[5]  See Lentino,
159 S.W.3d at 652B53.





[6]  At this point in the proceedings, Marta was
appearing pro se, and the remaining plaintiffs were appearing through
counsel.  Marta adopted the pleadings of the other Lentinos in which they
amended and supplemented their original petition.





[7]  This pleading was signed by Marta and by counsel for
the remaining Lentinos.





[8]  Marta=s
children (Fabiola, Michelle, and Natalia) and the Eduardo P. Lentino Children=s Trust   assigned their claims to Marta in exchange
for the right to receive 85% of any recovery by Marta.  The assignment documents
contain language indicating that Marta will be representing the assignors
herself in prosecuting the assigned claims.  





[9]  The Rule 11 agreement, executed on August 20, 2001,
between Frost Bank=s counsel and counsel for all the Lentinos except
Marta, provided Frost Bank would waive the award of sanctions against Marta and
all parties agreed they would not appeal any aspect of the case.





[10]  This allegation appears to be based on the Rule 11
agreement between Frost Bank and the other Lentinos.





[11]  The third and fourth claims appear to be based on
the Rule 11 agreement.





[12]  See Lentino, 159 S.W.3d at 652
(regarding Dov Avni Kaminetzky=s
intervention).





[13]  See Tex.
Bus. & Com. Code Ann. ''
24.001B.013 (Vernon 2002 & Supp. 2007).  Marta did not
indicate for which claims she is assignee.





[14]  See also Tex. Gov=t Code
Ann. ' 81.101(a) (Vernon 2005) (defining
practice of law as preparation of pleading or other document incident to action
or special proceeding or management of action or proceeding on behalf of client
before judge in court as well as service rendered out of court, including
giving of advice or rendering of any service requiring use of legal skill or
knowledge); Crain v. Unauthorized Practice of Law Comm=n, 11 S.W.3d 328, 333 (Tex. App.CHouston [1st Dist.] 1999, pet.
denied) (stating statutory definition is not exclusive).





[15]  Cynthia=s
and Susana=s counsel withdrew on January 23, 2002.  Other than
the notices of appeal, the only pleadings and motions filed after that date
were filed by Marta.  Counsel=s last pleading
on Cynthia=s and Susana=s
behalf was the Lentinos= June 11, 2001 Afirst
supplemental@ to their counter-counterclaim.  See note 7 supra.





[16]  Marta frames those issues as follows:

 

Issue 1: The evidence conclusively shows that FROST
never acquired any claims against Lentino or by Lentino pursuant to its merger
with Cullen thus lacked standing. Accordingly, the trial court erred in
granting FROST=s motion for summary judgment, instead, the trial
court should have granted LENTINO=s
motion for summary judgment and render judgment FROST did not have standing and
was liable to LENTINOS.

 

Issue 2: Alternatively, there is a Agenuine material issue of fact@ as to whether FROST had consummated its merger with
CULLEN and was the holder of the causes of action against LENTINOS at the time
it obtained the judgment. Accordingly, the trial court erred in granting FROST=s motion for summary judgment.

 

Issue 3: The evidence conclusively shows there is no
proof of consummation of a complete merger under which the claims against
LENTINOS could of [sic] pass [sic] automatically without recording and without
notice to the affected parties[.] Accordingly, the trial court erred in
granting FROST=s motion for summary judgment.

. . .

 

Issue 5: Did the trial court abuse its discretion in
applying Texas law to the effect of the merger of CULLEN a state banking
association into FROST a national banking association pursuant to 12 U.S.C. ' 215a?

 

Issue 6: The trial court erred in overlooking LENTINOS= time‑accrual of their different causes of
action.

. . .

 

Issue 9: Did the trial court err in granting summary
judgment when the record reflects the existence of several material fact
issues?

 

. . .

 

Issue 12:
Did the trial court err in not allowing Appellants= new claims to be tried by jury as timely requested
and paid for?





[17]  Marta characterizes the misrepresentation in two
distinct ways: (1) as a misrepresentation of when  Frost Bank learned of the Acreation and capitalization@ of the trusts and (2) as a misrepresentation of when
Frost Bank learned of the Atransfer of
assets@ to the trusts.  That Frost Bank may have known of the
creation and capitalization of the trusts in 1986 is not inconsistent with its
stating it did not know of Eduardo=s
and Jorge=s fraudulent transfers of funds to those trusts until
1991.  See note 21, infra.





[18]  Although Marta asks this court to review the trial
court=s denial of her motions for summary judgment, we
cannot review these rulings because these motions sought a partial rather than
a final judgment.  See CU Lloyd=s of Tex. v. Feldman, 977
S.W.2d 568, 569 (Tex. 1998) (stating the general rule that, before a court of
appeals may review an order denying a cross-motion for summary judgment not
covered by an interlocutory appeal statute, both parties must have sought final
judgment in their cross-motions for summary judgment).





[19]  Frost Bank argues the mergers to which Marta refers
occurred before 1999 and could have been litigated in the 1991 lawsuit (in which
the plea of abatement was filed on February 14, 2000).  Frost Bank=s argument, however, misses the point that Marta
refers to documents and statements about those mergers and Frost Bank=s summary-judgment proof did not address those
documents and statements, which Marta contends Frost Bank concealed and which
she contends establish, or raise a fact issue, that Frost Bank fraudulently
represented the status of the merger.





[20]  It appears the issue of fraudulent representation in
relation to merger/standing in the 1991 lawsuit was tried in the 2004
bill-of-review proceeding.  See Lentino, 2007 WL 2198827, at *2 (listing fraud, accident or wrongful act of
opponent as one element bill of review complainant must prove and stating one
issue on appeal of denial of bill of review was whether Frost Bank had standing
to prove its claims).  We need not and do not address the preclusive effect of
the trial court=s judgment in the 2004 bill-of-review proceeding
because the trial court did not render its written judgment in that proceeding
until six days after Frost Bank filed its motion for summary judgment in the
present suit.  Although Frost Bank refers to the bill-of-review judgment in the
present appeal, it was not part of Frost Bank=s summary-judgment proof.  Also not part of Frost Bank=s summary-judgment proof, but mentioned by reference
in this court, is Marta=s statement that the second appeal in the 1991 lawsuit
would resolve all issues then pending in the present case, including an issue
of Frost Bank=s alleged lack of standing.





[21]  The summary-judgment proof on which Marta relies to
establish a fraudulent representation indicates only that Cullen Bank knew of
the existence and capitalization of certain trusts in 1986, not that it knew of
fraudulent transfers to those trusts as early as 1986.  The point in time at
which Cullen Bank knew or should have known of the allegedly fraudulent
transfers appears to have been relevant to a limitations defense in the 1991
lawsuit.





[22]  As stated in note 18, supra, to the extent
Marta asserts in these issues that the trial court erred by denying her motions
for summary judgment, we cannot review these rulings because Marta did not seek
a final summary judgment.





[23]  See Tex.
Bus. & Com. Code Ann. ''
24.001B.013 (Vernon 2002 & Supp. 2007).