**Affirmed and Memorandum Opinion filed April 21, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00991-CV

## CINDY HARRELL, SUCCESSOR TRUSTEE OF THE SAM MINCHEN REVOCABLE LIVING TRUST, Appellant

## V.

## EVERETT STOVALL, AS INDEPENDENT EXECUTOR OF THE SAM MINCHEN ESTATE; JASON EWING ALLEN; AND HOWARD STREET CONDOS, L.P., Appellees

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 78434-CV**

## MEMORANDUM OPINION

Appellant Cindy Harrell as successor trustee of the Sam Minchen Revocable Living Trust appeals the trial court's judgment after a jury trial in favor of Everett Stovall as independent executor of the Sam Minchen Estate, Jason Ewing Allen, and Howard Street Condos. In twelve issues Cindy argues (1) the trial court erred in submitting certain instructions to the jury; (2) there is no evidence to support the

jury's finding that Sam Minchen revoked the Trust; (3) the jury's findings that Everett Stovall did not commit fraud and that Jason Allen was not in possession of money that belonged to the Trust are against the overwhelming weight of the credible evidence; and (4) there is no evidence to support the jury's findings on appellees' affirmative defenses. Concluding that the evidence supports the jury's finding of res judicata, which barred this action, we affirm.

## BACKGROUND

### I.      Formation of the Trust and Sale of the Bluewater Property to Renew Blue

On May 20, 2005, Sam Minchen created a Revocable Living Trust ("the Trust"). Sam had four children, Sammy, Helen, Mitchell, and Cindy.[1] The Trust estate was made up of certain property including real property at 500 Bluewater Highway ("the Bluewater Property"). The Trust named Sam's daughter Helen Allen Arguello as trustee and Helen's son Jason Ewing Allen as successor trustee. On the day the Trust was created Sam executed a general warranty deed that transferred title to the Bluewater Property from Sam to the Trust reserving a life estate in the Bluewater Property for Sam's life. Sam later amended the Trust naming himself as trustee and Mark Elder, his daughter Cindy's ex-husband, as substitute trustee. The amended Trust named Cindy's son Zachary Elder as beneficiary.

Sam subsequently sold the Bluewater Property to a company called Renew Blue for $2,500,000. Renew Blue paid $10,000 in cash and signed a promissory note for the remaining balance. Renew Blue made nine payments by check to Sam of $25,000 each from January 2009 through March 2010. Each of the checks was deposited into Sam's personal bank account. Renew Blue bought the Bluewater Property to institute an operation that would withdraw saltwater from the ocean and

---

[1] For ease of reference we will refer to the family members by their first names.

make plastic products.

Approximately one year after selling the Bluewater Property to Renew Blue, Sam executed a will, which devised all of his property to Jason, Sam's grandson. Everett Stovall, Sam's attorney, prepared the will and was named as the independent executor. Stovall testified over objection that at the time Stovall prepared the 2009 will, Sam told Stovall that he wanted the will to dispose of his property rather than the Trust. Stovall did not prepare documents to terminate the Trust because Sam led him to believe that documents were unnecessary. Sam told Stovall that the Trust was terminated when the Bluewater Property was sold to Renew Blue.

## II.    The Will Contest

Just over one year after executing the 2009 will, Sam passed away and Stovall was appointed temporary independent executor of Sam's estate. Approximately two months after Sam's death, Cindy filed an application to probate a different will in the Brazoria County Court at Law ("the Probate Court"). Cindy filed with her application a will dated February 22, 1995, which left all of Sam's property to Cindy, leaving Sam's other three children $10 each. Cindy argued that the 1995 will was never revoked and that Sam did not have testamentary capacity at the time the 2009 will was drafted. Stovall filed the will drafted by him on Sam's behalf dated February 24, 2009 and submitted the 2009 will to the Probate Court for probate. Jason, Sam's grandson and beneficiary under the 2009 will, filed a petition in intervention seeking to intervene as beneficiary of the 2009 will. Attached to Jason's intervention was a copy of the Trust document.

In the meantime, Renew Blue's complex operation did not progress. The process of removing the saltwater was expected to involve large trucks in and out of the area, and round-the-clock processing, which was expected to be noisy. The Bluewater Property, however, was not zoned for such a commercial use. After

3

Hurricane Ike hit the Texas Gulf Coast in September 2008, the plant and equipment Renew Blue was using "was in total disrepair and disarray" and was condemned by Surfside city council.

While the will contest was pending in Probate Court, Renew Blue's parent company sent a letter to Stovall stating that its use for the Bluewater Property had changed and while it still wanted to own the Bluewater Property it sought a reduction in its monthly payment. The letter expressed that Renew Blue was willing to pay the full $25,000 per month while Sam was alive to assist him with his end-of-life medical bills, but after Sam's death, Renew Blue was not willing to make the same monthly payment. As temporary administrator Stovall sought approval from the Probate Court to negotiate a monthly payment reduction on the Renew Blue note. Stovall filed a motion with the Probate Court stating that all parties to the will contest approved the proposal to reduce Renew Blue's payments from $25,000 per month to $15,000 per month. At the time of Stovall's motion Renew Blue was in default on the note.

In connection with Stovall's motion in the Probate Court he exchanged email communications with Don Ford, Cindy's attorney. Three email exchanges were admitted into evidence over Cindy's relevance objection. One of the email exchanges, which occurred on September 29-30, 2010, begins with the following note from Stovall to Ford:

> Jason Allen's attorneys have indicated that their client is generally in favor of the proposal to rework the real estate note.
>
> Please let me know your client's position on this.

Ford, representing Cindy, responded:

> Generally, I am in agreement with the proposal. I have a couple of questions, though. As it stands today, **the Estate has the right to foreclose on this property and take it back because of the default**.

When the president of Renew Blue says that we would redo the Note, is it your intention that the default would be cured at that point such that we would lose our option to foreclose on the note, unless they subsequently defaulted again? Also, have you received any more payments from them, or is the November 1 payment going to be the first?

(emphasis added)

Stovall agreed with Ford that Sam's estate had the right to foreclose on the Bluewater Property. At this time the will contest was pending, and Cindy was pursuing admission of the 1995 will, which devised all of Sam's estate including the note receivable on the Bluewater Property to her. Renew Blue defaulted on the note and made no further payments even after receiving a negotiated monthly payment amount.

After a jury trial, the Probate Court signed a final judgment admitting the 2009 will to probate and issuing letters testamentary to Stovall as independent executor of Sam's estate. The Probate Court further found that Cindy defended or prosecuted the will contest in good faith and awarded attorney's fees to Cindy of $53,000. On March 15, 2011, Stovall, as independent executor, submitted an "Inventory and Appraisement" of Sam's estate. The inventory included as an asset of the estate a note receivable secured by the Bluewater Property in the amount of $2,429,603.35. The Probate Court signed an order approving the inventory, appraisement, and list of claims on March 17, 2011.

## III. Foreclosure and Sale of the Bluewater Property to Howard Street

When Stovall eventually foreclosed on the note as independent executor of Sam's estate, he did not give notice to Cindy or Zachary, her son, that he was foreclosing on the note. Stovall testified that he was not obligated to give notice of foreclosure because the note belonged to the estate. At the time of Sam's death the

5

Bluewater Property was owned by Renew Blue; Sam's estate owned the note on the Bluewater Property.

When the Bluewater Property was put up for sale at foreclosure no buyers appeared to purchase the Bluewater Property. Therefore, Stovall, on behalf of the estate, bid $2,000,000 and "canceled the note." Stovall, also on behalf of the estate, later sold the Bluewater Property to Howard Street Condos for approximately $415,000. Stovall received the proceeds of the sale on behalf of Sam's estate and distributed them to Sam's heir Jason. Jason was unclear on the exact amount he received from the proceeds of the sale but testified that he received approximately $300,000, which had been spent on legal fees.

## IV. The Underlying Suit

After the foreclosure and subsequent sale Cindy sought to enforce the Trust to obtain the Bluewater Property or the proceeds from its sale. At that time the amended Trust documents named Zachary as beneficiary and Mark Elder, Cindy's ex-husband as substitute trustee. Mark declined to act as substitute trustee and named Cindy as substitute trustee.

Before Cindy's appointment as substitute trustee, Cindy filed an original petition for declaratory judgment regarding the Trust in Montgomery County District Court. Cindy filed the declaratory judgment action as next friend of her son Zachary, a minor. That suit was subsequently dismissed, and the underlying suit was filed in Brazoria County.

After Cindy's appointment as substitute trustee of the Trust, she filed suit against Stovall as independent executor of Sam's estate, alleging wrongful foreclosure and fraud by nondisclosure. Cindy sued Jason alleging unjust enrichment and money had and received. Cindy sued Howard Street Condos alleging trespass to

6

try title. Cindy sought damages in the amount of $343,268.17 plus the sums received under the Renew Blue promissory note. The central question raised by Cindy's suit was whether the Bluewater Property was an asset of the Trust or Sam's estate at the time of Sam's death.

Howard Street Condos answered and asserted the affirmative defense that it was a bona fide purchaser of the Bluewater Property. Stovall and Jason asserted the affirmative defenses of estoppel, res judicata, laches, waiver, and ratification, arguing that the issue of ownership of the Bluewater Property was litigated in the will contest in the Probate Court.

## V.    Trial

Cindy presented the testimony of an attorney, Esther Anderson, as an expert witness. Anderson testified that if the Trust had not been revoked in 2009, Mark, Cindy's ex-husband, would have been the successor trustee on Sam's death. At that time, had the Trust not been revoked, Zachary, Cindy's son, would have been the beneficiary of the Trust. Anderson testified that, in her opinion, the Trust was not revoked by Renew Blue's direct payments to Sam individually because there was no written document revoking the Trust. Anderson testified that Stovall did not have the authority to foreclose on the note. Anderson further opined that Stovall, by foreclosing on the note on the Bluewater Property and selling it to Howard Street Condos, breached his fiduciary duty to Zachary as beneficiary of the Trust.

Cindy testified that she had a good relationship with Sam, her father, until her divorce in 2003. Cindy re-established a relationship with Sam in the summer before Hurricane Ike hit the Texas Gulf Coast. After Hurricane Ike destroyed much of Sam's property, their relationship cooled again. In the months following Hurricane Ike, Jason and Sam resumed contact. They fortuitously ran into each other in a bank and rekindled their relationship.

Cindy testified that, in her position as substitute trustee of the trust, she would not have agreed to foreclosure of the Bluewater Property if she had been notified. As damages Cindy sought superior title to the Bluewater Property and the money Jason received after the Bluewater Property's sale to Howard Street Condos. Cindy agreed to reimburse Howard Street for the improvements they made to the Bluewater Property. A portion of Cindy's testimony was impeached by earlier deposition testimony given in the will contest in which she stated that she believed the Trust had been revoked.

Larry Davison, managing partner of Howard Street Condos, testified that Howard Street is a real estate company that purchases property primarily in Surfside, Texas, and develops residential units on that property. At the time that Howard Street bought the Bluewater Property it owned lots on either side of the Bluewater Property. Davison began developing the Bluewater Property through Howard Street until the underlying suit was filed. Davison received notice of a lis pendens on the Bluewater Property approximately two years after buying the Bluewater Property, and stopped making improvements. Davison began developing the Bluewater Property two years earlier because he thought ownership had been resolved in the probate proceeding. Davison relied on that resolution when he purchased the Bluewater Property.

At the close of Cindy's evidence Howard Street moved for a directed verdict on Cindy's wrongful foreclosure claim on the grounds that there was no evidence of a grossly inadequate sales price. Howard Street also moved for directed verdict on res judicata grounds arguing that the issue of whether the note was an asset of the estate or of the Trust had been fully litigated in the will contest. Stovall moved for directed verdict on the issue of fraud by non-disclosure arguing that Stovall owed no duty of disclosure to Cindy or her son Zachary. The trial court granted Howard Street's motion for directed verdict on wrongful foreclosure but submitted all other

8

issues to the jury.

The jury found (1) the Trust was revoked; (2) Stovall did not commit fraud against Cindy; (3) Jason did not hold money that belonged to Cindy; (4) Cindy was estopped from asserting her rights against Stovall, Jason, and Howard Street; (5) Cindy was barred from enforcing the Trust because of laches; (6) Cindy was barred from enforcing the Trust because of res judicata; (7) Cindy waived her right to take legal action against Stovall, Jason, and Howard Street; and (8) Cindy ratified Stovall's actions regarding the Bluewater Property. The trial court entered judgment based on the jury's findings.

In twelve issues on appeal Cindy challenges the (1) trial court's jury charge instructions, (2) factual sufficiency of the evidence to support the jury's finding that Stovall did not commit fraud and Jason did not possess money that belonged to Cindy; (3) legal sufficiency of the evidence to support the jury's findings that the Trust was revoked; and (4) legal sufficiency of the evidence to support the jury's findings of estoppel, laches, waiver, res judicata, and ratification. Because it is dispositive, we first address Cindy's issue challenging the jury's finding that res judicata barred her from enforcing the Trust.

## ANALYSIS

In Cindy's ninth issue she argues there is no evidence to support the jury's finding that her claims are barred by res judicata.

## I.     Standard of Review and Applicable Law

When reviewing a challenge to the legal sufficiency of the evidence we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and

disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011); *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). In this case the jury found Cindy's claims were barred by res judicata.

Res judicata, or claim preclusion, is an affirmative defense, which prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). The burden is on the party asserting an affirmative defense to plead and prove the defense's respective elements. *See Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 137 (Tex. App.—El Paso 1997, pet. denied).

To successfully assert the affirmative defense of res judicata, a party must prove: (1) a final prior judgment on the merits by a court of competent jurisdiction; (2) the identity of the parties, or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When applicable, res judicata bars the second, subsequent suit. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) ("Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action.") (quoting *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008)).

## II.     The jury's finding of res judicata is supported by sufficient evidence.

Before turning to the jury's finding we first address Cindy's related issue in which she challenges the trial court's jury instruction.

### A.     Jury instruction on Probate Court's jurisdiction

In her sixth issue Cindy argues the trial court's instruction concerning jurisdiction in Questions 13, 14, 15, 16, and 17 was "incorrect, improper and confusing to the jury." Question No. 15 read as follows:

Is Cindy Harrell barred from enforcing the Trust's rights because of res judicata?

Res judicata prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit.

The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.

Any cause of action which arises out of those same facts should, if

11

practicable, be litigated in the same lawsuit.

> In 2010 a county court at law had jurisdiction to hear an issue regarding the interpretation and administration of an inter vivos trust created by a decedent whose will has been admitted to probate in the court.

Cindy argues on appeal that the instruction given to the jury contained a "misleading oversimplification of the procedural history of the case" and caused her unfair prejudice. She further argues that the Probate Court did not have jurisdiction to consider the Trust during the will contest. Cindy, however, did not object on those grounds to this instruction before the charge was submitted to the jury. Cindy's only objection to Question No. 15 was that there was no evidence to support submission of the question to the jury.

Failure to timely object to error in a jury charge constitutes a waiver of that error. Tex. R. Civ. P. 272. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." Tex. R. Civ. P. 274; *see Burbage v. Burbage*, 447 S.W.3d 249, 255–58 (Tex. 2014) (holding party waives any objection to jury charge by failing to raise specific objection to proposed submission). Therefore, Cindy waived any error in the instruction given to the jury. We overrule Cindy's sixth issue.

Absent a valid charge objection, we measure the sufficiency of the evidence by the charge actually submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Westview Drive Investments, LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 602 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We now turn to the issue of whether the evidence supports the jury's finding of res judicata by examining each element as submitted to the jury.

## B. Final prior judgment on the merits by a court of competent jurisdiction

In her ninth issue Cindy argues that no evidence supports the jury's finding of

12

res judicata in response to Question No. 15 in the jury charge. In that regard Cindy argues that appellees Stovall, Jason, and Howard Street, did not "offer or secure any evidence, direct or circumstantial, demonstrating that the Trust was involved in a prior lawsuit."

Cindy first argues that there is no evidence that she could have sought enforcement of the Trust in the Probate Court where the will contest was filed. Cindy argues that only a district court has subject-matter jurisdiction to make determinations of fact affecting the administration, distribution, or duration of a trust or to determine a question arising in the administration of a trust.

A court of competent jurisdiction "is one having authority over the defendant, authority over the subject matter, and power to enter the particular judgment rendered." *Cantu v. Howard S. Grossman, P.A.*, 251 S.W.3d 731, 735 n.4 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). At the time the will contest was filed, Texas Property Code section 115.001 stated that a district court had original and exclusive jurisdiction over all proceedings concerning trusts, including proceedings to "make determinations of fact affecting the administration, distribution, or duration of a trust" and "determine a question arising in the administration or distribution of a trust." Tex. Prop. Code Ann. § 115.001(a)(6)–(7). The jurisdiction of a district court over proceedings concerning trusts is exclusive except for the jurisdiction conferred by law on a statutory probate court. *Id*. § 115.001(a), (d).[2] County Court at Law No. 3 in Brazoria County where the will contest was tried is a statutory county court, which is also designated as a statutory probate court. *See* Tex. Gov't Code Ann. § 25.0221 (listing "County Court at Law No. 3 and Probate Court of Brazoria

---

[2] In 2011, the Legislature added a county court at law to the list of courts that could determine matters involving a trust. *See* Act of May 17, 2007, 80th Leg., R.S., ch. 451, § 11, 2007 Tex. Gen. Laws 801, 804–5. Because the will contest was filed before that date we refer to the prior version of the statute.

13

County" as a statutory county court). The heading in the judgment from the Probate Court reads, "In the County Court at Law No. 3 and Probate Court of Brazoria County, Texas."

Therefore, the Probate Court in Brazoria County was a court of competent jurisdiction, which had jurisdiction to hear an issue regarding the interpretation and administration of the Trust during the will contest filed in that court. The jury charge as submitted instructed the jury that the Probate Court had jurisdiction to consider administration of an inter vivos trust at the time the will contest was filed. The ownership of the note receivable on the Bluewater Property was at issue in the Probate Court as evidenced by the Probate Court's approval of the inventory containing the note secured by the Bluewater Property. Sufficient evidence supports the jury's finding that there was a valid judgment on the merits in a court of competent jurisdiction on ownership of the note receivable on the Bluewater Property. The Probate Court judgment, along with the inventory filed by Stovall, distributed the note on the Bluewater Property to Jason, Sam's beneficiary under the 2009 will.

### C.    Identity of the parties

Cindy next argues that there was no identity of parties because she could not prosecute her claims under the Trust in Probate Court because she was not named successor trustee of the Trust until 2014.

Res judicata applies when a party in the second suit is in privity with a party in the first suit. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Privity connotes those who are so connected with a party to the judgment in the law such that the party to the judgment represented the same legal right. *Gaughan v. Spires Council of Co-Owners*, 870 S.W.2d 552, 555 (Tex. App.—Houston [1st Dist.] 1993, no writ). One can be in privity in at least three ways: (1) she can control an

action even if she is not a party to it; (2) her interests can be represented by a party to the action; or (3) she can be a successor in interest, deriving her claims through a party to the prior action. *Amstadt*, 919 S.W.2d at 653. Privity exists if the parties share an identity of interests in the basic legal right that is the subject of the litigation. *Espeche v. Ritzell*, 123 S.W.3d 657, 667 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Here, Cindy was a party to both suits and the basic legal right of ownership of the note receivable on the Bluewater Property was the subject of the litigation in both actions. Cindy argues, however, that she represented her individual rights in Probate Court and represented her rights as a successor trustee in the subsequent suit. Cindy argues she could not have asserted her rights as successor trustee in Probate Court because she did not have standing to assert an interest in the Trust until she was appointed successor trustee. Cindy's standing as successor trustee, however, is not the issue with regard to privity.

The basic legal right asserted by Cindy is identical in both suits. Cindy, representing her own interests, was a party to the Probate Court action and asserted that the Bluewater Property and the note receivable were part of Sam's estate because she was seeking to recover under a will that devised Sam's estate to her. In the second suit, Cindy, in her purported position as successor trustee, asserted that the Bluewater Property was a part of the Trust, and belonged to her son, Zachary, as beneficiary.

Cindy was a party to both actions because she shared an identity of interests in the basic legal right that was the subject of both actions. *See Espeche*, 123 S.W.3d at 667. Cindy ignores the fact that she could have asserted Zachary's rights to the Bluewater Property during the will contest in Probate Court. The Trust document was filed with the Probate Court as an attachment to Jason's intervention. At the

15

time of the will contest Zachary was a minor whose interests in the Trust as beneficiary would have been represented by Cindy. *See* Tex. R. Civ. P. 44 (minor may be represented by "next friend"). In fact, Cindy filed the declaratory judgment action in 2011 as next friend of Zachary. Therefore, the evidence supports the element of privity.

**D.     Second action based on the same claims as were or could have been raised in the first action**

In Probate Court Cindy asserted the right to recover all of Sam's estate including the note receivable on the Bluewater Property. Cindy argues that, "There is no pleading, transcript, or record documenting that Cindy presented the Trust's claims to the Brazoria County Court at Law." In this argument, Cindy misrepresents the standard under this element of res judicata. The standard is not that the same claims *were* brought, but that they *could have been* brought in the first action. *Amstadt*, 919 S.W.2d at 652.

The policy behind the doctrine of res judicata reflects the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Welch v. Hrabar*, 110 S.W.3d 601, 609 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Texas law greatly discourages the multiplicity of suits, preferring that all disputes between the parties over the same subject matter be settled in one suit. This general doctrine is recognized in all existing systems of jurisprudence, but applied in Texas with particular force. *Barrientos v. Nava*, 94 S.W.3d 270, 277 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

In the underlying action Cindy sought title to the Bluewater Property and the proceeds of the sale of the Bluewater Property. It is well-established in Texas law that an adjudication of the right to possession of property is res judicata of a

subsequent suit concerning the same issue. *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 235 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, despite the fact that Howard Street was a bona fide purchase, Cindy sought possession of the Bluewater Property. Cindy also sought the proceeds from the sale of the Bluewater Property.

Although Cindy did not file the Trust document with the Probate Court and did not claim a right to the Bluewater Property under the Trust document at that time, that issue could have, and should have, been litigated by the Probate Court. For that reason, the doctrine of res judicata barred Cindy from recovering in a subsequent action claiming a right to the Bluewater Property or the proceeds from the Bluewater Property's sale. Viewing the evidence in the light most favorable to the jury's finding, as we are required to do, we hold the evidence was legally sufficient to support the res judicata finding. We overrule Cindy's ninth issue.

## III.    The jury's finding of res judicata precludes Cindy's remaining claims.

Our holding that the jury's res judicata finding is supported by legally sufficient evidence pretermits a discussion of Cindy's remaining challenges to the trial court's judgment. In her remaining issues Cindy challenges the trial court's instructions to the jury charge, legal sufficiency of the evidence to support the jury's finding that the Trust was revoked, and factual sufficiency of the evidence to support the jury's rejection of her fraud and money-had-and-received claims.

The Supreme Court of Texas explained in *Barr* that "a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Barr*, 217 S.W.3d at 631. Determining the scope of the "subject matter" or "transaction" of the prior suit requires "an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id*. at 630. This should be done pragmatically, "giving weight

17

to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id*. at 631. "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id*. at 630.

The affirmative defense of res judicata bars Cindy's claims for wrongful foreclosure, fraud, trespass to try title, money had and received, and unjust enrichment. Each of those causes of action arose from Cindy's claim that the Trust was not revoked and that the proceeds from the sale of the Bluewater Property belonged to Zachary. As stated above, the issue of ownership of the note receivable on the Bluewater Property was finally adjudicated in the will contest. In fact, Cindy agreed that the Bluewater Property was a part of the estate and that the estate was entitled to foreclose on the Bluewater Property. We therefore need not address Cindy's remaining issues challenging the trial court's judgment.

## CONCLUSION

Viewing the evidence in the light most favorable to the verdict as we must, we overrule Cindy's sixth and ninth issues and hold that res judicata barred the underlying action. We affirm the trial court's judgment.


/s/    Jerry Zimmerer
Justice


Panel consists of Justices Christopher, Wise, and Zimmerer.